**Maria PEREZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45823.**

Court of Criminal Appeals of Texas.

March 21, 1973.

John J. Herrera, Houston, for appellant.

Carol Vance, Dist. Atty. and James C. Brough and Vic Pecorino, Asst. Dist. Atty., Houston, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of murder; punishment was assessed at life.

Appellant alleges five grounds of error, the first and third being contentions that it was error to permit the state to show the illicit relationship between the appellant and the deceased, both females.

The evidence shows that the 41 year old appellant and the 36 year old deceased had known each other for many years and had lived together from time to time; that approximately one month prior to the homicide in question the deceased discontinued living with the appellant and resumed living with her husband and their children. On the night of the homicide the deceased went to her mother-in-law's house with her husband for a visit. She and three of her children returned to her house before her husband returned and the appellant appeared on the scene and shot the deceased with a .22 caliber pistol, causing the death.

Edward Gonzales, the deceased's brother-in-law, testified that he had known the appellant for approximately twenty years. He stated that she always dressed like a man; kept her hair cut like a man; wore men's clothing, including men's shoes; had never known of her having a date with a man; and, "she always takes a man's place." He testified that to his knowledge the appellant and the deceased had been living together "like a man and woman would." He identified State's Exhibit No. 2, a photograph of the appellant, showing her with a short hair cut. He stated it de-

picted the way appellant looked during the twenty years that he had known her.

Sally Gonzales, the deceased's sister, testified that she lived with the deceased for a period of time after the deceased had discontinued living with appellant. She stated that on one occasion the appellant came to the house and told her that she wanted to talk to the deceased. She told the appellant to leave the deceased alone, whereupon the appellant responded that "she would never leave her alone."

Lessie Spencer, a supervisor at the Gayla Manufacturing Company, where the deceased had been working, testified that when a certain person, whom she thought to be a man, would come to the factory the deceased "would get shook up and nervous * * * She couldn't do her work." The witness then identified the appellant as the person who would come to the factory and as the person she thought was a man. She testified that on one afternoon the appellant came there as the deceased was getting off work, walked up to her and stated "You are going with me. You are going with me." She stated that the deceased resisted and requested the witness to "Please go get Mr. Phillips," who was their boss. She did this and when she and Mr. Phillips got back the appellant had driven away. She stated that the deceased had red marks on her throat and scratches on her arm.

Cynthia Kashiwada, the 19 year old daughter of the deceased, testified that the appellant came frequently to their house to visit her mother, before her mother and father separated. She stated that on one occasion she observed the appellant and her mother kissing. Another time she found her mother and the appellant in the living room, lying on a blanket that was on the floor.

Manuel Rodriguez, Jr., son of the deceased, testified that while his mother was separated from his father she lived with the appellant and that the children lived with them for about three months. He stated that his mother and the appellant shared the same bedroom. He also testified that on the night of the killing he, his father and mother, and the three other children were visiting at his grandmother's house; that his mother and the three younger children went home early, leaving him and his father there at his grandmother's house; that later his father received a telephone call and was asked to come home; that he and his father returned home and found his mother, on the floor, bleeding from the mouth; and that they rushed her to the hospital, where she died.

Leroy Rodriguez, the 14 year old son of the deceased, testified that he, his mother, sister, and brother left his grandmother's house on the night in question and that his mother retired and went to sleep. He stated that the appellant called and asked to speak to his mother. He woke her and told her that the appellant wanted her on the phone. She answered the phone and, after a brief conversation, hung up. The appellant called again. This time his brother answered and called his mother to the phone. He testified that soon thereafter the appellant came over to the house, knocked on the door and said she wanted to see his mother. He locked the door and went back to his mother's room and told her that the appellant was waiting to see her. His mother told him to let her in the house. He did so. He stated that the appellant told his mother that she was not to talk to his father any more and then summoned her outside, but his mother refused to go. He stated that the appellant then told his mother that she was not to see his grandmother any more and that she would kill her if she did. He testified that appellant then pointed a pistol at his mother; that his mother pushed it away; and that appellant cocked the pistol, pointed it at his mother again and shot her. He further testified that appellant "busted" the porch light as she left the house.

Leroy's testimony was substantially corroborated by the testimony of Josephone Rodriguez (the 12 year old daughter of de-

ceased) and of Hernando Rodriguez (the 9 year old son of deceased).

A deputy sheriff identified State's Exhibit No. 3 as the pistol that appellant handed to him at her home when he was investigating the killing. He testified that when appellant gave him the pistol it contained 5 live .22 caliber bullets and one empty hull.

Appellant, testifying in her own behalf, denied being a lesbian or homosexual, and stated that the reason she wore men's clothing was that she was a truck farmer and could better work in that type of dress. She testified that she had known the deceased for approximately 30 years and that their relationship was only that of good friends. She stated that they lived together for approximately six years, but denied an illicit relationship. She described the shooting as an accident and explained that the gun discharged accidentally when she removed it from her belt. She denied breaking the porch light.

■ The first and third grounds of error are overruled as the relationship between the appellant and the deceased was clearly admissible under Article 1257a, Vernon's Ann.P.C. See also, Fleming v. State, 172 Tex.Cr.R. 520, 360 S.W.2d 153; Myers v. State, 159 Tex.Cr.R. 579, 266 S.W.2d 380; King v. State, 156 Tex.Cr.R. 508, 243 S.W.2d 846.

■ Appellant's second ground of error which states:

"The undue speed and rapidity in which the court allowed and permitted the state to conduct the trial of the appellant, in view of the gravity of the offense charged, and the extreme and inflammatory methods used by the state to prosecute the appellant,"

is not an assignment of error under the requirements of Article 40.09, Sec. 9, Vernon's Ann.C.C.P., and will not be discussed.

■ The fourth ground of error complains of the admission of State's Exhibit No. 2 into evidence. Such Exhibit is a photograph of the appellant showing the way she looked and dressed at the time of the commission of the offense. The Exhibit was clearly admissible for the reasons set out in the discussion heretofore on grounds of error one and three, as it shows motive as well as being additional proof that the appellant, through the years, did not dress and look as she did at the time of trial.[1] It is further noted that the only objection to the photograph when it was admitted was that a proper predicate had not been laid, which objection is not sufficient to preserve error under the facts of this case.

■ Finally, appellant contends that her retained counsel at trial was ineffective. Such contention is overruled. Viewing the record in its entirety, it is evident that appellant's counsel of her choice at trial was adequately prepared and did a commendable job; nevertheless, had such not been the case, the state cannot be charged with error of counsel of one's own choice. See, e. g., Lawson v. State, 467 S.W.2d 486.

There being no reversible error, the judgment is affirmed.

1. Apparently appellant was dressed in women's clothing and had long hair at the time of trial.