Mark Ira WILLIAMS

v.

W. J. ESTELLE, Director, Texas Department of Corrections and Lon Evans, Sheriff Tarrant County.

Civ. A. No. CA 4–76–174.

United States District Court,
N. D. Texas,
Fort Worth Division.

July 9, 1976.

**1074**

Frank D. McCown, Fort Worth, Tex., for plaintiff.

Tim C. Curry, Criminal Dist. Atty., Marvin Collins, Asst. Dist. Atty., Fort Worth, Tex., for Lon Evans.

### MEMORANDUM AND ORDER OF DISMISSAL

MAHON, District Judge.

This is an action on a Petition for Writ of Habeas Corpus, For a Stay of Sentence, and For Bail, filed by Petitioner on 17 June 1976. Respondent Lon Evans has moved to dismiss.[1] Respondent's motion came on for oral argument before the Court on 25 June 1976. After careful consideration, the Court is of the opinion that Respondent's motion should be granted.

I.

On a motion to dismiss, the Court accepts Petitioner's factual allegations as if

---

1. W. J. Estelle, Director of Texas Department of Corrections, a named respondent in this action, has in fact not responded or appeared.

they had been proven true. Petitioner alleges the following factual background to his arrest and plea of guilty:

On Saturday, September 7, 1974, Petitioner left Dulles airport in Washington, bound for Tucson. He checked a suitcase through to Tucson. In the suitcase were a pistol, $5,000.00 in currency, and about one pound of marijuana. En route, for his 21st birthday celebration, Petitioner drank some drinks served by the airline, and smoked a part of one marijuana cigarette. As a result of the combination of drinks, marijuana, and altitude of the plane, Petitioner became very disoriented. He left the plane at Dallas/Fort Worth airport attempting to make the connecting flight to Tucson. He was arrested in the jet-way between the plane and the airport by officers of the Department of Public Safety of D/FW airport. He was not in possession of the suitcase at the time of his arrest. After a preliminary search, he was taken to an office of the DPS about 6 p. m. on Saturday, September 7, 1974, and booked.

Some $23,000 was found on his person as was a false identification and a baggage claim check. He was then questioned off and on for several hours while he was still disoriented.

The baggage claim check for the suitcase was taken from Petitioner's wallet by an officer. The method in which the bag was obtained from the airline and whether it was sent to Tucson by the airline and retrieved by the officers or was taken by them at the D/FW airport before the plane left for Tucson is unknown to Petitioner. The bag, in any event, was not in Petitioner's possession but the airline's. Petitioner had never intended to see the bag in Texas and had no way of guaranteeing that the bag would be on the same airplane as he. The bag was brought back to the office and Petitioner was asked repeatedly to open it and sign a consent form. He refused. He asked for counsel, but was allowed no phone calls. At noon on the following day, Sunday, some 18 hours after his arrest, Petitioner was allowed to call an attorney. This attorney came and talked with the officers and Petitioner. The officers were still asking for consent to search Petitioner's suitcase. Petitioner had told the attorney that he had a pistol, $5,000 in cash, and about one pound of marijuana in the suitcase. Under the existing Texas law at the time, possession of the two marijuana cigarettes was a Class B misdemeanor and a fine and six months in jail was the maximum punishment. Possession of more than 4 ounces of marijuana was a felony punishable by not less tha[n] two nor more than ten years in the penitentiary and a fine of $5,000.00. The attorney told Petitioner that unless he consented to the search and allowed the officers to search his bag, they would keep his money and give it to the IRS where it would be tied up for a long time and he might loose all or a part of it. He also told Petitioner that the officers could and would get a search warrant and search the bag anyway. He said that there was no way that the officers would not get a search warrant and that the Petitioner might as well cooperate with the authorities as they had him cold. The attorney also told him that he would be charged with a felony and that the attorney thought he would get a probated sentence. Petitioner, acting on the advice of the attorney, consented to the search. The bag was searched and the marijuana was found. The attorney left, went to Dallas, and obtained a writ of habeas corpus. Petitioner was released and given the gun and all his money, from which he paid the attorney $4,000.00 as a retainer and $500 for a writ bond fee. The money was paid that Sunday.

Petitioner subsequently plead guilty, before a jury in Criminal District Court No. 3, Tarrant County, Texas, to possession of more than four ounces of marijuana. Petitioner was sentenced to two years in the penitentiary and $5,000.00 fine. The case was appealed and affirmed, and mandate has issued. Petitioner is presently in the Tarrant County Jail awaiting transfer to the state penitentiary.

## II.

The basic issues in Petitioner's suit are whether his representation by personally retained counsel was adequate or whether he had effective advice of his counsel at trial and at the time he consented to the search of his suitcase. Petitioner claims that his attorney was ineffective and that this rendered his trial fundamentally unfair. Respondent's Motion to Dismiss primarily asserts that Petitioner has failed to exhaust state remedies. It is on this ground that the Court dismisses this action.

In *United States ex rel. Reis v. Wainwright*, 525 F.2d 1269 (5th Cir. 1976) [hereinafter *"Reis"*], the Fifth Circuit held that a Florida petitioner in habeas corpus who complained of lack of effective retained counsel need not have exhausted state remedies prior to petitioning for relief in federal district court. In that case, the petitioner had applied to state district court for a writ of habeas corpus, but had failed to appeal the district court's summary denial of relief. Pointing out that the doctrine of exhaustion of remedies is a matter of comity, not jurisdiction, and that state remedies need not be exhausted where it is plain that resort to the state courts would be futile, the *Reis* Court stated:

> In an uninterrupted line of cases Florida has steadfastly refused to recognize incompetence of privately retained counsel as a valid basis for post-conviction relief. The rule appears firmly entrenched in Florida's jurisprudence, and we see no indication that a Florida appellate court would be inclined to deviate from this well worn path.
>
> . . . The rule has been maintained in Florida, even in the face of holdings of this circuit that a defendant who is denied due process because of the incompetency of privately retained counsel is as deserving of post-conviction relief as a defendant who has had court-appointed counsel, *e. g., Bell v. State of Alabama*, 367 F.2d 243 (5th Cir. 1966).

Even the state, in opposition to the appellant's motion for an evidentiary hearing on the issue of incompetent counsel under Fla.R.Crim.P. 3.850, argued that an evidentiary hearing was unnecessary because "Florida cases are legion in holding that in post-conviction relief cases one may not contest the competency of privately retained counsel." The state is unable to cite a single Florida case evidencing even the slightest penchant to abandon its precedent. In these circumstances, dismissal for want of exhaustion of state remedies is not justified. "Neither the statute nor the spirit of needed comity behind it require such a formalistic waste of precious judicial energy, state or federal." *Reed v. Beto, supra* [5 Cir.], 343 F.2d [723], at 725.

525 F.2d at 1272–1273 (footnotes omitted).

Petitioner urges that the present case is controlled by *Reis* and that this federal Court should therefore hear the merits of his claim without requiring him to exhaust state remedies. His argument is basically that the Texas Court of Criminal Appeals and the Fifth Circuit Court of Appeals have evolved different standards for determining the ineffectiveness of privately retained counsel. He contends that the facts as plead constitute a maintainable habeas corpus action under the Fifth Circuit standard, but that under the Texas standard, he would be foreclosed as a matter of law from seeking such relief.

## III.

The standard for ineffective assistance of privately retained counsel in the Fifth Circuit is clearly set forth in *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir.), *cert. denied*, 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975) [hereinafter *"Fitzgerald"*], and *Reis*, 525 F.2d 1269. The Fifth Circuit has reasoned that the two constitutional bases for attacking the effectiveness of counsel, the Fourteenth Amendment right to due process of law and the Sixth Amendment[2] right to assistance of

---

**2.** The Sixth Amendment was made applicable to the states through the Fourteenth Amendment's right to due process. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

counsel, require different standards of effectiveness. Thus, the federal courts in the Fifth Circuit apply a two-pronged test of effectiveness.

■ (1) The Fourteenth Amendment's guarantees of due process of law are violated when defense counsel's representation is so blatantly incompetent as to render the whole proceeding fundamentally unfair. *Reis*, 525 F.2d at 1273. The "fundamentally unfair" standard is applicable only where there has been such a gross malfunction in the judicial proceedings that the state's criminal justice system has operated to deny petitioner his Fourteenth Amendment right to due process. *Fitzgerald*, 505 F.2d at 1336. In such a situation, where the judicial system itself has operated to deny the defendant due process of law, it does not matter whether counsel was court-appointed or privately retained. "The conviction of a defendant after a trial that is fundamentally unfair, whatever the cause of such unfairness, violates Fourteenth Amendment due process." *Fitzgerald*, 505 F.2d at 1336.

■ (2) The Sixth Amendment's guarantee of reasonably effective assistance of counsel covers a broader range of counsel errors than does the Fourteenth Amendment's guarantees of due process. *See Herring v. Estelle*, 491 F.2d 125 (5th Cir. 1974) [hereinafter "*Herring*"]. Therefore, if the alleged errors of counsel do not amount to fundamental unfairness, the defendant can still collaterally attack the competency of his counsel under the Sixth Amendment standard. It is necessary, however, under the Sixth Amendment test, to demonstrate state involvement in the defense counsel's conduct. *Fitzgerald*, 505 F.2d at 1337. Where defense counsel is court-appointed, such state involvement is self-evident. It is more difficult, however, to demonstrate state involvement in the errors of retained counsel.

To find state involvement in retained counsel's conduct which is adjudged to be less than reasonably effective, yet not so grossly deficient as to render the proceedings fundamentally unfair, it must be shown that some responsible state official connected with the criminal proceeding who could have remedied the conduct failed in his duty to accord justice to the accused. That the trial judge and the prosecutor have such a capacity and duty is unquestionable. Therefore, if the trial judge or the prosecutor can be shown to have actually known that a particular defendant is receiving incompetent representation and takes no remedial action, the state action requirement is satisfied. If they directly participate in the incompetency, it is even more so. Furthermore, if the incompetency of a retained attorney's representation is so apparent that a reasonably attentive official of the state should have been aware of and could have corrected it then again the state action requirement is satisfied.

*Fitzgerald*, 505 F.2d at 1337. (footnote omitted).

### IV.

It is certainly more difficult to exactly delineate the Texas standard for ineffectiveness of counsel. Nevertheless, after reviewing a multitude of recent Texas Court of Criminal Appeals decisions wherein appellate or habeas corpus relief was sought on the basis of ineffectiveness of counsel, some aspects of the Texas standard are readily discernible.

■ The Texas Court of Criminal Appeals does not recognize any difference in scope or operation between the Fourteenth Amendment right to due process and the Sixth Amendment right to assistance of counsel. Instead, Texas courts apply the same standard to claims of violations of both Amendments. *See Ex parte Gallegos*, 511 S.W.2d 510 (Tex.Cr.App.1974) [hereinafter "*Gallegos*"]; *Kincaid v. State*, 500 S.W.2d 487 (Tex.Cr.App.1973); *Sellers v. State*, 492 S.W.2d 265 (Tex.Cr.App.1973) [hereinafter "*Sellers*"]; *White v. State*, 487 S.W.2d 104 (Tex.Cr.App.1972) [hereinafter "*White*"]; *Erdelyan v. State*, 481 S.W.2d

843 (Tex.Cr.App.1972) [hereinafter *"Erde-lyan"*].

■ The Texas Court of Criminal Appeals does, however, differentiate between court-appointed and privately retained counsel. Where counsel is appointed, Texas courts apply the "reasonably effective assistance" standard of *MacKenna v. Ellis,* 280 F.2d 592 (5th Cir. 1960), *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961), in accordance with *Herring,* 491 F.2d 125. *Gallegos,* 511 S.W.2d at 511–512; *Powers v. State,* 492 S.W.2d 274, 276 (Tex. Cr.App.1973).

But where counsel is privately retained, the Texas courts have traditionally stated that no claim of incompetency or lack of effective assistance of counsel can be imputed to the State. *Hunnicutt v. State,* 531 S.W.2d 618, 625–626 (Tex.Cr.App.1976) [hereinafter *"Hunnicutt"*] and cases cited therein; *Elizalde v. State,* 507 S.W.2d 749 (Tex.Cr.App.1974) [hereinafter *"Elizalde"*]; *Cleaver v. State,* 498 S.W.2d 945 (Tex.Cr. App.1973) [hereinafter *"Cleaver"*]; *Martin v. State,* 493 S.W.2d 866 (Tex.Cr.App.1973) [hereinafter *"Martin"*]; *Sellers,* 492 S.W.2d 265; *Perez v. State,* 491 S.W.2d 672 (Tex. Cr.App.1973) [hereinafter *"Perez"*]; *Guerrero v. State,* 487 S.W.2d 729 (Tex.Cr. App.1972) [hereinafter *"Guerrero"*]; *White,* 487 S.W.2d 104; *Mills v. State,* 483 S.W.2d 264 (Tex.Cr.App.1972) [hereinafter *"Mills"*]; *Trotter v. State,* 471 S.W.2d 822 (Tex.Cr.App.1971) [hereinafter *"Trotter"*]. The case of *Lawson v. State,* 467 S.W.2d 486 (Tex.Cr.App.1971) [hereinafter *"Lawson"*] is evidently the origin of this doctrine of lack of state involvement in the conduct of privately retained counsel in Texas caselaw. The *Lawson* Court constructed this rationale from the Fifth Circuit's opinion in *Howard v. Beto,* 375 F.2d 441 (5th Cir. 1967), a case that has since been distinguished and overruled in the Fifth Circuit. *Lawson,* 467 S.W.2d at 488; *Fitzgerald,* 505 F.2d at 1336 and 1337 n. 3.

Despite the fact that Texas courts deny any state involvement in the actions of privately retained counsel, there has evolved a "breach of legal duty" standard under which a defendant can collaterally attack the effectiveness of his retained counsel. The traditional statement of this standard is that the record must reflect "willful misconduct by retained counsel without [the defendant's] knowledge which amounts to a breach of legal duty so as to deny [the defendant] effective assistance of counsel." *Hunnicutt,* 531 S.W.2d at 626, and cases cited therein; *Ex parte Hill,* 528 S.W.2d 259 (Tex.Cr.App.1975) [hereinafter *"Hill"*]; *Ex parte Raley,* 528 S.W.2d 257 (Tex.Cr.App. 1975) [hereinafter *"Raley"*]; *Elizalde,* 507 S.W.2d 749; *Cleaver,* 498 S.W.2d 945; *Sellers,* 492 S.W.2d 265; *Guerrero,* 487 S.W.2d 729; *White,* 587 S.W.2d 104; *Mills,* 483 S.W.2d 264; *Trotter,* 471 S.W.2d 822; *Lawson,* 467 S.W.2d 486.

It is at this point that the Texas law on ineffectiveness of retained counsel becomes more obscure. It is hard to deal with the Texas standard at the outset, because no legal reasoning has ever been proffered to reconcile the existence of the "breach of legal duty" standard with the apparently complete denial of any state responsibility for the conduct of retained counsel. It is possible to manufacture a rationale based on the Fifth Circuit's distinction between the Sixth and Fourteenth Amendments: that the Texas test for violation of the Fourteenth Amendment's guarantees of due process is the "breach of legal duty" standard, which does not require state action, whereas no action based on violation of the Sixth Amendment can be brought in Texas, because Texas courts refuse to find any state action in the conduct of retained counsel. Unfortunately, this rationale will stand up in light of actual Texas decisions. As pointed out above, the Texas Court of Criminal Appeals has never distinguished between the Fourteenth and the Sixth Amendments. Indeed, the Texas case adopting the "breach of legal duty" standard, *Steel v. State,* 453 S.W.2d 486 (Tex.Cr. App.1970) [hereinafter *"Steel"*], spoke of infringement of Sixth Amendment rights only.

The reason for the coexistence of the "willful breach of legal duty" standard and

the "no state action" doctrine is apparently historical. The "breach of legal duty" standard originated in *Holbert v. State*, 439 S.W.2d 507 (Mo.1969) [hereinafter "*Holbert*"], a decision by the Supreme Court of Missouri. In *Holbert*, the petitioner alleged that his attorney told him that a motion for new trial would be filed, and later told him that the trial judge had overruled the motion, though in fact no motion for new trial was ever filed. As a result of this deceitful action, the petitioner was deprived of an appeal on the merits. In remanding the case to the trial court to conduct further investigations, the *Holbert* Court reviewed several then recent federal decisions, and concluded:

. . . These cases clearly imply that *willful* (but not necessarily negligent) misconduct by an employed attorney without defendant's knowledge which amounts to a breach of the legal duty of an attorney to his client, can in some circumstances constitute an infringement of an accused's federally protected right to effective representation by counsel in a criminal proceeding.

439 S.W.2d at 510. It is clear that the Court in *Holbert* did not necessarily exclude negligent breach of duty. The Court was simply not required to reach the question of negligence on the facts before it.[3]

The Texas Court of Criminal Appeals adopted the *Holbert* standard into Texas law in *Steel*, 453 S.W.2d 486. In *Steel*, an indigent defendant had made known to the trial court and to his retained counsel that he desired to appeal. Nevertheless, without notice to the court or the defendant, defendant's counsel failed to file a trial brief. In an opinion by Judge Onion, the *Steel*

Court acknowledged the holding in *Porter v. United States*, 298 F.2d 461, 463 (5th Cir. 1962) that "'the Constitution assures a defendant effective representation by counsel whether the attorney is of his own choosing or court-appointed.'" 453 S.W.2d at 487. The *Steel* decision then went on to quote the *Holbert* decision at length and remanded the case to the trial court for further proceedings.

Thus, "willful breach of legal duty" became the standard in Texas for measuring the ineffectiveness of retained counsel, even though it is clear that the standard was not applied restrictively in *Steel*. A year later, however, in *Lawson*, 467 S.W.2d 486, the Texas Court of Criminal Appeals, again through Judge Onion, ostensibly applied the *Steel/Holbert* standard restrictively to deny an appeal based on the ineffectiveness of retained counsel. The *Lawson* Court then added:

. . . Further, counsel not being court appointed any incompetency or lack of effective assistance on the part of such counsel cannot be imputed to the State. *Howard v. Beto* (5th Cir.) 375 F.2d 441. 467 S.W.2d at 488.

Hence, the denial of state involvement in the actions of retained counsel was simply a tacked-on rationale for denying relief. Indeed, an inspection of cases concerning ineffectiveness of retained counsel since *Lawson* indicates that the denial of state responsibility has been used as little more than a maxim tossed out as additional justification for a given result.

■ Assuming, therefore, that there is no real force in the platitude completely denying state involvement, the issue before the Court now becomes the exact scope of the

---

**3.** The two Fifth Circuit cases on which the *Holbert* Court principally relied spoke only to "breach of a legal duty," not necessarily a "willful" breach. *Alexander v. United States*, 290 F.2d 252 (5th Cir. 1961); *Kennedy v. United States*, 259 F.2d 883 (5th Cir. 1958), *cert. denied*, 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982 (1959). More importantly, Missouri courts have not applied the *Holbert* test in the strict manner in which Texas courts claim to. When quoting the *Holbert* standard, recent Missouri cases have omitted the reference to "willful"

conduct. Moreover, in Missouri, the *Holbert* test appears to be merely one of several tests, which in aggregate pose the question whether the trial was essentially "fair." *McQueen v. State*, 475 S.W.2d 111, 116–117 (Mo. *en banc* 1971) (Finch, J., concurring); *Boyer v. State*, 527 S.W.2d 432, 437 (Mo.App.1975); *State v. Nolan*, 499 S.W.2d 240, 252 (Mo.App.1973); *Hall v. State*, 496 S.W.2d 300, 303 (Mo.App. 1973); *Brown v. State*, 495 S.W.2d 690, 694 (Mo.App.1973); *Thebeau v. State*, 491 S.W.2d 275, 277 (Mo.1973).

"willful breach of legal duty" standard. The cases of clearest application are those where retained counsel has deliberately misled the defendant to the point that the defendant has been deprived of some substantive legal right. Thus, where a defendant desires to appeal his conviction and makes his desire known to his employed attorney, but is deliberately misled by his attorney, until the time to file an appeal has passed, into thinking that such appeal has been filed, the Texas standard requires that collateral relief be granted. *Hill*, 528 S.W.2d 259; *Raley*, 528 S.W.2d 257.

But where a defendant claims mere ineffectiveness of representation, the Texas standard is less clear. A great many Texas Court of Criminal Appeals decisions have stated the applicable standard as "breach of a legal duty to faithfully represent the accused's interests," omitting all reference to "willful." *E. g.*, *Martin*, 493 S.W.2d 866; *Farmer v. State*, 491 S.W.2d 133 (Tex.Cr. App.1973); *Perez*, 491 S.W.2d 672; *Gondek v. State*, 491 S.W.2d 676 (Tex.Cr.App.1973) [hereinafter *"Gondek"*]; *Rodriguez v. State*, 489 S.W.2d 121 (Tex.Cr.App.1972) [hereinafter *"Rodriguez"*]; *Helms v. State*, 484 S.W.2d 925 (Tex.Cr.App.1972); *Chatman v. State*, 478 S.W.2d 91 (Tex.Cr.App. 1972) [hereinafter *"Chatman"*].

In *Erdelyan*, 481 S.W.2d 843, the Texas Court of Criminal Appeals defined even the "willful breach" standard as "any bad faith, insincerity or disloyalty toward [the defendant] by his attorney," and indicated that gross lack of awareness would also be sufficient. Only a good faith error or mistake would be excluded under the Texas standard. 481 S.W.2d at 846. A similar definition is proffered in *Rodriguez*, 489 S.W.2d at 123. Under this definition, of course,

mere bad judgment in trial tactics or objections is insufficient. *Gondek*, 491 S.W.2d at 677.

In *Trotter*, 471 S.W.2d 822, the Texas Court of Criminal Appeals, through Judge Onion, first noted the "willful breach" and "no state involvement" standards, and then favorably cited and quoted *MacKenna v. Ellis*, 280 F.2d 592 (5th Cir. 1960), apparently equating the "breach of legal duty" standard with "reasonably effective assistance of counsel." 471 S.W.2d at 823–824. This definition has most recently been reasserted in *Rockwood v. State*, 524 S.W.2d 292 (Tex. Cr.App.1975) [hereinafter *"Rockwood"*], which equates "a violation of a legal duty" with "inadequate representation of counsel." [4]

Indeed, at least two recent Texas cases concerning effectiveness of retained counsel have been decided solely on the question of inadequate representation without reference to the "willful breach" or "no state involvement" rhetoric: *Ex parte Marez*, 505 S.W.2d 930 (Tex.Cr.App.1974) [hereinafter *"Marez"*], and *Rozell v. State*, 502 S.W.2d 16 (Tex.Cr.App.1973) [hereinafter *"Rozell"*]. The *Marez* decision in particular is important to the present determination. In *Marez*, the Texas Court of Criminal Appeals granted a writ of habeas corpus based on the ineffective representation of retained counsel where no willful or deliberate deceit of retained counsel was asserted. The *Marez* decision, standing alone, might well be enough to require this Court to reject Petitioner's *Reis* argument.[5] There are, however, certain problems with an unqualified acceptance of *Marez* as controlling the present case. *Marez* was based on a factual situation involving as strong a combination of incompetency and unfairness as one might ever fear to find.[6] The *Marez*

---

4. It should also be noted that even where the Texas Court of Criminal Appeals has denied collateral relief and set forth the boiler plate "willful breach" and "no state involvement" standards, the Court has usually examined the record thoroughly for evidence of ineffectiveness of the retained counsel. *E. g.*, *Elizalde*, 507 S.W.2d 749; *Sellers*, 492 S.W.2d 265; *Perez*, 491 S.W.2d 672; *Chatman*, 478 S.W.2d 91; *Trotter*, 471 S.W.2d 822.

5. See *Reis*, 525 F.2d at 1272–1273.

6. The District Court there found that the petitioner's trial counsel was a long-term alcoholic suffering from an organic brain syndrome that was secondary to cerebral arteriosclerosis, that counsel had interviewed the petitioner only twice, that no aspect of the case was explained or discussed with the petitioner, that counsel consistently attempted to plead cases to keep from trying them, and that the petitioner was

Court cited no authority whatsoever for its decision and failed to set forth any standard for incompetency of counsel. *Marez* may even have been an agreed habeas corpus proceeding.[7]

A chronology of recent relevant Texas Court of Criminal Appeals decisions is useful as a demonstration of the current state of the law in Texas. Following a long series of cases setting forth both the "willful breach" and "no state involvement" standards, in 1973 and 1974 the Texas Court of Criminal Appeals denied and granted relief based solely on the notion of ineffectiveness of counsel. *Rozell*, 502 S.W.2d 16 (Douglas, J.); *Marez*, 505 S.W.2d 930 (Dally, Comm'r). Shortly thereafter in 1974, the Court stated both traditional rationales while thoroughly searching the record for evidence of ineffectiveness. *Elizalde*, 507 S.W.2d 749 (Green, Comm'r). That same year, the Court adopted the Fifth Circuit test for ineffectiveness of appointed counsel. *Gallegos*, 511 S.W.2d 510 (Onion, P. J.).

Then, in 1975, in a concurring opinion to *Ruth v. State*, 522 S.W.2d 517 (Tex.Cr.App. 1975), Judge Morrison cited the Fifth Circuit's *Fitzgerald* decision with approval. 522 S.W.2d at 519 (Morrison, J., concurring). This was shortly followed by the opinion in *Rockwood*, 524 S.W.2d 292 (Douglas, J.), equating "violation of a legal duty" with "inadequate representation of counsel." Then, in *Stutes v. State*, 530 S.W.2d 309 (Tex.Cr.App.1975) (Roberts, J.), the appellant argued that the distinction in the standards of effectiveness for retained and appointed counsel should be abolished. The Court in *Stutes* stated:

> The issue of which standard for effectiveness of counsel should be applied is squarely joined by the parties in their briefs. However, we need not reach that issue since appellant's counsel was not ineffective by even the stricter standards applicable to appointed counsel. We decline to take up each instance of effec-

tiveness alleged in appellant's brief, since the quality of representation is to be judged by the "totality of the representation." . . . We conclude that, under either standard, appellant was not denied the effective assistance of counsel.

530 S.W.2d at 313–314.[8]

But a month and a half later in *Hunnicutt*, 531 S.W.2d 618 (Onion, P. J.), the only 1976 decision so far in point, the Court, after discussing at great length each of the appellant's contentions of ineffectiveness of counsel and rejecting each of them for lack of supporting proof or evidence that a different result would have been reached had the retained counsel acted in any other manner, the Court authoritatively stated the two traditional propositions.

> Further, counsel having been retained, any claim of incompetency or lack of effective assistance of counsel cannot be imputed to the State. *Elizalde v. State*, 507 S.W.2d 749 (Tex.Cr.App.1974); *Kincaid v. State*, 500 S.W.2d 487 (Tex.Cr.App.1973); *Curtis v. State*, 500 S.W.2d 478 (Tex.Cr.App.1973); *Cleaver v. State*, 498 S.W.2d 945 (Tex.Cr.App.1973); *Martin v. State*, 493 S.W.2d 866 (Tex.Cr.App. 1973); *Sellers v. State*, 492 S.W.2d 265 (Tex.Cr.App.1973); *Hall v. State*, 492 S.W.2d 950 (Tex.Cr.App.1973); *Farmer v. State*, 491 S.W.2d 133 (Tex.Cr.App.1973); *Perez v. State*, 491 S.W.2d 672 (Tex.Cr.App.1973); *Gondek v. State*, 491 S.W.2d 676 (Tex.Cr.App.1973).

> Our review of the record does not reflect any willful misconduct by retained counsel without appellant's knowledge which amounts to a breach of legal duty so as to deny the appellant of the effective assistance of counsel. *Steel v. State*, 453 S.W.2d 486 (Tex.Cr.App.1970); *Lawson v. State*, 467 S.W.2d 486 (Tex.Cr.App. 1971); *Walsh v. State*, 468 S.W.2d 453 (Tex.Cr.App.1971); *Helms v. State*, 484 S.W.2d 925 (Tex.Cr.App.1972); *White v.*

---

so unfamiliar with the English language that he had no understanding of the nature of the proceedings against him or even that he had entered a plea.

7. "No evidence in opposition to the petition was offered by the State." 505 S.W.2d at 931.

8. The *Fitzgerald* opinion, however, was never cited by the *Stutes* Court.

*State*, 487 S.W.2d 104 (Tex.Cr.App.1972); *Ex parte Hill*, 528 S.W.2d 259 (Tex.Cr. App.1975), and cases there cited; *Ex parte Raley*, 528 S.W.2d 257 (Tex.Cr.App. 1975).

531 S.W.2d at 625–626.

## V.

▮ Petitioner argues that *Hunnicutt* is a definite rejection of the standards set forth in *Fitzgerald* and *Reis* and a reaffirmation of the Texas "no state involvement" and "breach of a legal duty" standards. Petitioner further argues that his claim of ineffective assistance of counsel is barred under the Texas standards, that any recourse to state court would be futile, and that he should therefore be permitted to file his action in federal court without exhausting state remedies. The Court disagrees on both points.

The Court is not of the opinion that Petitioner's claim is barred as a matter of law under the Texas standards nor that any recourse to state court would be futile. This is not a case such as *Reis* where the practical effect of the state court decisions is to foreclose any claims at all under a particular theory of law. As developed at length *supra*, the "breach of legal duty" standard has not been interpreted so narrowly in Texas as to foreclose all fact situations except those involving deliberate deceit. Petitioner here claims that his retained counsel incorrectly advised him in allowing the Department of Public Safety to search his luggage, when no narcotics charge was pending against him prior to the search, and failed to advise him of an entire legal theory of defense in counseling him to plead guilty. These are not the mere "trial tactics" on which the vast majority of unsuccessful Texas habeas petitioners have based their actions. Rather, these are primary assertions of ineffective assistance of counsel, which this Court cannot say the Texas courts would not seriously entertain.

Neither is this Court of the opinion that *Hunnicutt* is a final rejection of the standards set forth in *Fitzgerald* and *Reis*. Of course, Fifth Circuit opinions are not binding on Texas courts, which answer directly to the United States Supreme Court. *Reis*, 525 F.2d at 1272 n.11. But the Texas Court of Criminal Appeals has always shown great deference to Fifth Circuit opinions. Indeed, notions of comity require such deference from both the state and federal courts where their responsibility overlaps. Just as this Court would not waste the time of Petitioner and the Texas court system in requiring exhaustion of state remedies where it is plain that resort to the state courts would be futile, *Reis*, 525 F.2d at 1272; *St. Jules v. Savage*, 512 F.2d 881 (5th Cir. 1975); *Stubbs v. Smith*, 533 F.2d 64 (2d Cir. 1976), so it would little avail Texas courts to adopt a constitutional construction of the Fourteenth and Sixth Amendments narrower than that well-settled in the Fifth Circuit. The relief to petitioners must eventually be forthcoming, even if from a different court.

*Reis* was not decided by the Fifth Circuit in time to be available for the Texas Court of Criminal Appeals in *Hunnicutt*, and nowhere in *Hunnicutt* is the *Fitzgerald* decision even mentioned. Instead, the *Hunnicutt* Court carefully examined the details of the appellant's claims before restating the traditional Texas maxims. This is not the manner in which the highest state court would normally go about rejecting the local federal standards. Cf. *McDonald v. State*, 257 Ark. 879, 520 S.W.2d 292 (1975). The logical conclusion is that the issue is not yet settled in Texas. The Texas Court of Criminal Appeals has not yet had a chance to consider *Reis*'s reaffirmance of *Fitzgerald*. Exhaustion is therefore to be required as a matter of comity. *Glenn v. Askew*, 513 F.2d 61 (5th Cir. 1975); *Williams v. Wainwright*, 410 F.2d 144 (5th Cir. 1969).

## VI.

Accordingly, the Court ORDERS that the above referenced cause of action be dismissed without prejudice to pursuing appropriate relief in the courts of the State of Texas.