Kartis EWING, Appellant,

v.

The STATE of Texas, Appellee.

No. 51935.

Court of Criminal Appeals of Texas.

April 6, 1977.

Rehearing Denied May 3, 1977.

Mary B. Edwards, Andrew L. Jefferson, Jr., Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis M. Bell and Robert N. Ross, Jr., Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

Appellant was convicted for robbery by assault, an offense prohibited by Art. 1408 of the former Penal Code. His punishment was assessed at ten years' imprisonment.

On appeal appellant is represented by two attorneys. His trial counsel was appointed to represent him on appeal, and his family retained another attorney for the appeal. The retained attorney's brief was filed untimely. We shall, however, review the issue raised in his brief as unassigned error in the interest of justice pursuant to Art. 40.09(13), V.A.C.C.P. *Long v. State*, Tex.Cr.App., 502 S.W.2d 139.

The sufficiency of the evidence is not challenged.

Virgie Hart, the complaining witness, testified that two males entered the Shipley Do-Nuts shop shortly after 10:00 p. m. on November 29, 1973. After purchasing some donuts, they returned to their car, a brown 1960 Chevrolet. Appellant then went back into the shop and instructed Hart to open the cash register. According to Hart, the appellant had a blue jean jacket over his right hand. Hart stated she was unable to move because she was "in fear of her life." The appellant took approximately $30.00 from the register and fled. The police were notified and were given the license number of the Chevrolet, which Hart had written down.

Carolyn Tabors, also an employee of the shop, told substantially the same story as Hart. Both State witnesses identified the appellant as the robber after the police apprehended him and brought him back to the shop.

Appellant's first ground of error, raised by his attorney appointed at trial, asserts that reversible error was committed when the trial court denied a motion for continuance.

Appellant testified during the trial and denied any participation in the robbery. During cross-examination at the guilt stage of the trial, the appellant stated that he had been mistreated and beaten by the police. He also said that he did not receive medical attention for three days.

Appellant's counsel informed the court that she was unaware of any mistreatment of the appellant. On the basis of surprise, she requested a continuance in order to secure other defense witnesses. This motion was denied.

We perceive no error. The granting of a motion for continuance after the commencement of a trial is within the sound discretion of the trial court. *Stein v. State*, Tex.Cr.App., 514 S.W.2d 927; *Bradshaw v. State*, Tex.Cr.App., 482 S.W.2d 233. Appellant failed to show what witnesses he would have called if the trial had been postponed. Furthermore, there is nothing in the record describing the additional testimony or evidence that would have been offered. See, *Silva v. State*, Tex.Cr.App., 502 S.W.2d 149. The first ground of error is overruled.

The attorney retained on appeal has raised the issue of the effectiveness of appellant's retained trial counsel.

■ For purposes of determining the effectiveness of an attorney's representation, we have adopted the "reasonably effective" assistance of counsel standard for use in this jurisdiction. *Mott v. State*, 543 S.W.2d 623, citing *Satillan v. State*, Tex.Cr.App., 470 S.W.2d 677; *Ex parte Prior*, Tex.Cr. App., 540 S.W.2d 723; *Ex parte Gallegos*, Tex.Cr.App., 511 S.W.2d 510. We have also formulated reasonable and flexible rules in order to guide our application of this standard.

■ First, the sufficiency of an attorney's assistance must be gauged by the totality of the representation of the accused. *Ex parte Prior, supra.* In our system of criminal justice an individual is entitled to a fair but not a perfect trial. Isolated failures to object to certain procedural mistakes or improper evidence do not constitute a breach of legal duty by an accused's attorney.

■ We also observe that assertions of ineffective counsel shall be sustained only if they are "firmly founded." *Williams v. State*, Tex.Cr.App., 535 S.W.2d 352; *Faz v. State*, Tex.Cr.App., 510 S.W.2d 922. The record must affirmatively demonstrate the counsel's ineffectiveness.

■ Finally, we are not in a position to "second guess", through appellate hindsight, the strategy adopted by counsel at trial. *Faz v. State, supra.* Trial lawyers occupy the realm of the here and now; they do not possess the luxury of a record to review, nor are they given time to formulate solutions to complex procedural or evidentiary issues in the midst of trial. The fact that another attorney may have pursued a different tactical course of trial is insufficient to support a finding of ineffective assistance of counsel.

■ Appellant asserts that his trial attorney failed to object to the arresting officers' improper bolstering of the identification testimony entered by Hart and Tabors. The record establishes, however, that the bolstering testimony revealed a discrepancy in the evidence presented by the arresting officers. It is not unreasonable to conclude that the trial counsel's decision not to object to this testimony may have been supported by valid tactical justifications. *Faz v. State, supra.* A discrepancy in the State's evidence was presented by the improper testimony of the arresting officers. Furthermore, the failure to object to every instance of improper evidence does not mean that appellant's representation was ineffective. See *Long v. State*, Tex.Cr. App., 502 S.W.2d 139; *Roberts v. State*, Tex.Cr.App. 493 S.W.2d 849.

■ This reasoning also applies to the allegations that the trial counsel failed to object when certain hearsay testimony was admitted. Compare, *Ruth v. State*, Tex.Cr. App., 522 S.W.2d 517.

■ Appellant also urges that inadequate representation is demonstrated by the trial counsel's cross-examination of the arresting officers. During this cross-examination, appellant was shown to have been a suspect in two burglaries. The cross-examination of the two officers also established, however, that the appellant had not committed these offenses.

Once again, we have a question of tactics. *Faz v. State, supra.* Appellant testified in his own behalf that he was at the scene of the offense but did not commit any crime. His testimony indicated that a hitchhiker he had picked up committed the offense alleged in the indictment. Counsel may have attempted to demonstrate that the appellant had been suspected of wrongdoing in the past, but that he had eventually been exonerated. The evidence presented by appellant's testimony may be regarded as an effort to establish that, once again, the police and the public had suspected the "wrong man."

■ We should not, however, attempt to ascertain the specific reason why counsel interrogated the arresting officers in the manner established by the record. *Faz v. State, supra.* Our duty is to review the

totality of the representation and determine whether the appellant has been denied his constitutional right to effective assistance of counsel. *Ex parte Prior,* supra.

The record does not support the conclusion that appellant's retained trial counsel breached a legal duty to her client. See, *Pete v. State,* Tex.Cr.App., 533 S.W.2d 808; *Ex parte Hill,* Tex.Cr.App., 528 S.W.2d 259. The second ground of error is overruled.

The judgment is affirmed.

ROBERTS, Judge, dissenting.

The majority holds that "The record does not support the conclusion that appellant's *retained* trial counsel *breached a legal duty* to her client." (Emphasis added). I dissent.

The majority's conclusion furthers the obscurity in our decisions related to claims of ineffective assistance. *See, Williams v. Estelle,* 416 F.Supp. 1073 (N.D.Tex.1976). The "breach of a legal duty" standard is generally applied to claims of ineffective retained counsel, *Hunnicutt v. State,* 531 S.W.2d 618 (Tex.Cr.App.1976), while the "reasonably effective assistance" standard is generally applied to claims of ineffective appointed counsel. *Ex Parte Gallegos,* 511 S.W.2d 510 (Tex.Cr.App.1974).

There should be no distinction made between retained and appointed counsel, and neither should render "inadequate representation." *See, Rockwood v. State,* 524 S.W.2d 292, 294 (Tex.Cr.App.1975). Both retained and appointed counsel should be "reasonably competent." *Ex Parte Gallegos, supra,* at 513 (concurring opinion).

When the trial judge appoints a lawyer to represent a person accused of committing a crime, he simply fulfills the constitutional mandate; he does not by his affirmative action, as some prior decisions indicate, create a different standard of competency than the standard created if the individual himself had the wherewithal to hire the lawyer. While economic status may differ from individual to individual, the right to due process should remain the same. The fact that the defendant can pay a fee should not alter this Court's interpretation of his right to counsel. All individuals should stand equal before the law, regardless of economic status.

Aside from noting the above, I concur wholeheartedly in the dissenting opinion of Judge Phillips. The extraneous offenses were developed at length by the questioning of appellant's own counsel. I realize that "There are some cases that cannot be won" and that "An attorney must appraise a case and do the best he can with the facts." *Rockwood, supra,* at 293. It is equally clear to me that some actions cannot be deemed "trial strategy." Indeed, even the learned trial judge had to inquire of appellant's trial counsel at one point whether she was talking about "this particular offense."

The "breach of a legal duty" is not the test. Appellant was furnished with "inadequate representation." *Rockwood, supra,* at 294. I cannot in good faith say that appellant's representation at trial passes the "reasonable competence" test. *Ex Parte Gallegos, supra,* at 513 (concurring opinion, and cases there cited).

PHILLIPS, Judge, dissenting.

I cannot agree that admission of evidence showing appellant had twice been picked up by police officers for suspicion of burglary is "a question of tactics" in light of the record here presented. On direct examination Officer Cashion testified the license number relayed by Hart was checked out. He said, "We called the burglary and theft division that we had the car picked up approximately four days prior to that". The failure to object to this statement would not be sufficient to support a finding that trial counsel was ineffective. See *Long v. State, supra.* However, the details were then brought out on cross examination by appellant's counsel and Cashion testified:

"Q [DEFENSE COUNSEL]: You mentioned earlier that you had previously had some information on a make. For the purpose of the jury, that means that this car had been reported some other way, right?

A  Right.

Q  Would you explain what you mean by 'make' to the jury?

A  How we obtain the license number.

Q  You had had a make previously on this car, what do you mean?

A  We had picked it up for investigation of a burglary.

Q  This car?

A  Yes, ma'am.

Q  When?

A  Back on the 25th of November, 1973.

Q  Was Mr. Ewing involved?

A  Yes, ma'am; he was.

Q  You say Mr. Ewing was involved in a burglary?

A  We are saying we questioned him about a burglary.

Q  Was his car involved in a burglary? Was it positively—

A  We had it picked up for investigation of a burglary.

Q  Was it positively identified as being involved in the burglary?

A  Not at that time it wasn't. It was at the scene, though.

Q  Was Mr. Ewing in the car on the 25th?

A  No ma'am; he wasn't in the car."

Officer Davis explained the incident more fully during cross examination:

"Q  [DEFENSE COUNSEL]: How did you happen to go to Ringold and Prosper?

A  First of all, we had a license plate number. I asked the dispatcher—I can't remember which one of us did—got on the radio and got him to trace the registration on the car and it was registered to one Chris Leblanc who lived on—I can't remember the exact number. I think it is 1046. It was at about the intersection of Wheatley and South Victory. We proceeded to that house and talked to Chris Leblanc's mother who stated that her son had sold the car to Mr. Ewing, I think, two months earlier.

We then asked her if she knew where he lived. I can't remember whether she knew where he lived or not. From her house I called the burglary and theft division because we had the same car with the same license number towed off on the 28th from the scene of a burglary. Down at burglary they have a little card that stated who claimed the car. We put a 'hold' on the car for burglary and theft and before the man who wanted the car could get it out—it was out at the prisoner's lot is where it was—before he could get it released, he would have to get a release from the burglary and theft division and have to prove by means of registration that it was his car and prove who it was and it turned out it was the Defendant, Kartis Ewing, that got the car released from the burglary division.

Q  Did you find out that this car had actually been involved in a burglary?

A  Did I find out it was? We believed it was but we were not sure. We also apprehended Mr. Ewing at the scene of a burglary but since the car that we found there was a suspicious car, the only car there, it was some model homes, there was one or two trucks that blocked—I don't remember who built—let's say Suburban Homes, everybody knows them— one of the Suburban Company trucks were there and there was a passenger car parked on the other side of the lot. We had it picked up and towed off in case it was. Then I saw Mr. Ewing walking down toward the freeway shortly after we had made the burglary call there and so I arrested him for suspicion then but he was released at the scene since the car was not registered to him at that time.

Q  You never took him to the police department?

A  Not on the burglary we didn't. We didn't have enough evidence to think that we could.

Q  Did you find that the car had been reported stolen?

A  No, ma'am; it hadn't been reported stolen.

*     *     *     *     *     *

Q  You told me he was not handled for burglary?

A  He was picked up for suspicion of burglary the 15th of November for burglary of an apartment. He has the I.D. number from that case.

Q  You told me you didn't take him—

A  This is not the same burglary, this is another burglary. This is on the 15th. The time we picked him up that we arrested him at the scene was the 25th of November. On the 15th of November he was also handled by another set of officers for burglary of an apartment but he was released with no charge . . ."

The harmful effect of these two prior incidences was compounded on cross examination of appellant as follows:

"Q [PROSECUTOR]: Mr. Ewing, you have been breaking the law for some time now, haven't you?

A  No, I haven't.

2  And finally you got caught red-handed is what happened in this case, isn't it?

A  No."

Thus, the jury heard that appellant had been handled by the police on two occasions for suspicion of burglary. The foregoing testimony makes it clear appellant was not shown to be the person who committed these burglaries, thus the two burglaries were not admissible as extraneous offenses committed by the appellant. See *Albrecht v. State,* Tex.Cr.App., 486 S.W.2d 97; *Ford v. State,* Tex.Cr.App., 484 S.W.2d 727. As pointed out by counsel for the State during cross examination of appellant, the testimony concerning the two burglaries showed appellant to be of bad character, or a criminal generally. This testimony was obviously prejudicial in view of the fact that appellant was 18 years of age at the time of trial and had never been convicted of an offense.

We are not here presented with acts of omission by counsel, such as failure to call witnesses, see *Jones v. State,* Tex.Cr.App., 501 S.W.2d 677; including the accused, *Sims v. State,* Tex.Cr.App., 546 S.W.2d 296 (Decided January 26, 1977); failure to vigorously cross examine witnesses, *Rockwood v. State,* 524 S.W.2d 292; failure to make closing argument, *Ransonette v. State,* Tex.Cr.App., 550 S.W.2d 36 (Decided October 6, 1976); or failure to object to the admission of evidence, *Nichols v. State,* Tex.Cr.App., 500 S.W.2d 158. Such omissions may be due to trial strategy.

The improper, irrelevant and prejudicial testimony was injected into the case through the actions of appellant's trial counsel. To construe such action as trial strategy implies counsel was thoroughly familiar with the details of the two prior incidences. It is fundamental that an attorney must acquaint himself with the facts and law of the case before he can render reasonably effective assistance of counsel. *Caraway v. Beto,* 421 F.2d 636 (5th Cir. 1970); *Herring v. Estelle,* 491 F.2d 125 (5th Cir. 1974); *Gomez v. Beto,* 462 F.2d 596 (5th Cir. 1972).

I would hold that the introduction and further development of this prejudicial testimony by appellant's counsel amounts to a breach of a legal duty and denied appellant reasonably effective assistance of counsel as provided for in the Sixth Amendment of the U.S. Constitution and Art. I, Sec. 10 of the Texas Constitution. For this reason, I respectfully dissent.