Eric Victor ESTEVES, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–89–00775–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

July 9, 1992.

Rehearing Denied Jan. 13, 1993.

Eric Victor Esteves, pro se.

John B. Holmes, Jr., Dist. Atty., Ernest Davilla, Leslie Brock, Asst. Dist. Attys., for appellee.

Before MIRABAL, O'CONNOR and SAM BASS, JJ.

OPINION

SAM BASS, Justice.

A jury found appellant, Esteves, guilty of aggravated robbery. Finding the enhancement allegations true, the jury assessed punishment for life.

We affirm.

Late one evening, Debois and Haba went to see a basketball game. Because they arrived late, they parked some distance from the stadium. As they walked toward the stadium, a blue car approached and stopped, blocking their path. Appellant opened the door and stepped in front of them with a pistol.

Appellant demanded their money and stated "Don't jack with me or I'll kill you," pointing the pistol and waving it back and forth. Terrified, Debois and Haba began looking through their purses.

The driver told appellant to take the purses. Appellant grabbed Debois's arm and took both Debois and Haba's purses. Appellant got back into the car and left. Debois and Haba went to a nearby security guard, who called the police. Debois and Haba gave the police a description of the assailant and the car.

About seven hours later, appellant, along with Riles and Mayfield were arrested at a convenience store for having committed the offenses of criminal mischief and unauthorized use of a motor vehicle. The arresting police officers found several purses in the back seat of the car at the store. The purses were given to the Houston Police Robbery Division, and two were later identified as those stolen from Debois and Haba.

Appellant was placed in a five-man lineup. The lineup was videotaped. One day later, the videotape was separately shown to Debois and Haba. Haba positively identified appellant as the robber.

■ In point of error one, appellant argues he was denied a fair trial because the State peremptorily struck four black venire members on the basis of race.

The equal protection clause of the fourteenth amendment of the United States Constitution forbids a prosecutor from excluding venirepersons from jury service solely because of their race. *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991); *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986); U.S. CONST. amend. 14. Our State constitution also prohibits *Batson*-type discrimination in the selection of a jury. *Hill v. State,* 775 S.W.2d 754, 755 (Tex.App.—Dallas 1989, pet. ref'd); TEX. CONST. art. I, § 3a.

■ In reviewing a *Batson* claim, an appellate court must determine if the State exercised its peremptory strikes in a purposefully discriminatory manner. *Keeton v. State,* 749 S.W.2d 861, 870 (Tex.Crim.App.1988). The standard of review for a *Batson* challenge is whether the fact findings of the trial court are clearly erroneous. *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Crim.App.1989) (op. on reh'g) (specifically modifying the "supported by the record" standard adopted in *Keeton,* 749 S.W.2d at 870). A trial court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Whitsey,* 796 S.W.2d at 728.

■ Appellant complains the four black venirepersons were peremptorily struck by the State. Because the State's overall conduct in jury selection is relevant in proving discrimination, however, we must review each peremptory strike of a black venireperson and the plausible, racially-neutral explanation offered by the State for each. *Whitsey,* 796 S.W.2d at 727.

■ The prosecutor testified she struck Reed because she was not responsive to her questions. Another prosecutor noted that Reed had yawned throughout the voir dire proceedings. This was a legitimate, race-neutral reason to strike. *York v. State,* 764 S.W.2d 328, 331 (Tex.App.— Houston [1st Dist.] 1988, pet. ref'd).

■ When neutral explanations are offered it becomes the defendant's burden to persuade the court that such challenges were racially motivated. *Lewis v. State,* 815 S.W.2d 560, 563 (Tex.Crim.App.1991); *Jones v. State,* 781 S.W.2d 415, 417–18 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). Appellant offered no rebuttal.

■ The prosecutor testified she struck Simmons because she had indicated that she would need more than one witness before she could vote for conviction. Only after being repeatedly told by the trial judge did Simmons agree to follow the one-witness rule. *Garrett v. State,* 815 S.W.2d 333 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd).

Simmons also stated she had a first cousin who was charged with aggravated robbery.

Other courts have recognized that kinship to a person who has trouble with the law can constitute a legitimate, racially-neutral reason for striking a venireperson. *Sims v. State,* 768 S.W.2d 863, 865 (Tex.App.—Texarkana 1989) *pet. dism'd,* 792 S.W.2d 81 (Tex.Crim.App.1990) (citing *Rijo v. State,* 721 S.W.2d 562 (Tex.App.—Amarillo 1986, no pet.). Appellant offered no rebuttal.

■ The prosecutor testified Harrison was struck because she had an uncle convicted for sexual assault of a child. *Sims,* 768 S.W.2d at 865. In response to the appellant's rebuttal, the prosecutor explained she did not strike a white venireperson who had a nephew in prison for armed robbery because the venireperson explained he was not close to his nephew and had completely forgotten about his nephew's Louisiana conviction until he was questioned during voir dire. This explanation was sufficient to explain the differences in the strikes of the two parties so as to show no racial basis.

■ The prosecutor explained she struck Ross because Ross had stared at her from the moment that she entered the courtroom. No other member stared at her to

that degree. Again, appellant offered no rebuttal.

The trial court's determination to accept the prosecutor's explanations should be reviewed with great deference as they involve an evaluation of credibility. *Tompkins v. State,* 774 S.W.2d 195, 202 (Tex.Crim.App.1987). Here, the appellant has not shown that the trial court's determination was "clearly erroneous." *Whitsey,* 796 S.W.2d at 726.

We overrule appellant's point of error one.

In point of error two, appellant argues the trial court erred in allowing the State to introduce testimony of a pretrial lineup identification. Appellant contends the lineup shown was impermissibly suggestive and it resulted in irreparable misidentification.

Houston Police Sergeant McClane testified the lineup was held less than two days after the offense. The lineup consisted of five men wearing similar pants but different colored shirts. Appellant was allowed to chose his position in the lineup. The men had similar hair length and facial hair.

The next day, Debois and Haba were each shown a videotape of the lineup. Although Debois could not positively identify the appellant, Haba immediately picked appellant as her assailant. Sergeant McClane stated Debois and Haba viewed the videotape separately and were told the lineup may not include the persons that robbed them.

Appellant argues the lineup contained height, weight, and shirt disparities between the participants. Sergeant McClane testified the appellant was 6′ 1″ and weighed 180 pounds. The other four men were: 6′ 4″, 180 pounds; 6′ 1″, 150 pounds; 6′ 2″, 216 pounds; and 5′ 10″, 165 pounds. Appellant was the only participant wearing an orange shirt.[1]

■ We do not find the circumstances of the lineup impermissibly suggestive. It is not essential that all the individuals be

---

1. Sergeant McClane stated that the participants are picked from the available jail population and wear whatever they have on when they were arrested.

identical. *Buxton v. State,* 699 S.W.2d 212, 216 (Tex.Crim.App.1985). "[N]either due process of law nor common sense" requires such exactitude. *Herrera v. State,* 682 S.W.2d 313, 319 (Tex.Crim.App. 1984) (citing *Dickson v. State,* 492 S.W.2d 267, 271 (Tex.Crim.App.1973)).

Even if we assume for purposes of argument that the procedure was suggestive, we find Haba's identification reliable. Reliability is the "linchpin" in determining the admissibility of identification testimony. *Munguia v. State,* 603 S.W.2d 876, 878 (Tex.Crim.App.1980) (citing *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977)).

■ In determining the reliability, we consider: (1) the witness' opportunity to view the defendant during the commission of the offense; (2) the witness' degree of attention; (3) the accuracy of the prior description of the accused; (4) the level of certainty of the identification; and (5) the amount of time between the crime and the identification. *Munguia,* 603 S.W.2d at 878.

■ Here, Haba testified the area was well lit and she got a good look at appellant's face. Haba had described appellant to the police as a black man with dark complexion, approximately 6′ tall and 170 to 200 pounds. At trial, she expressed no doubt appellant was her assailant and stated she could have identified the appellant at trial even if she had not seen the videotaped lineup. In addition, less than 40 hours had elapsed between the offense and the showing of the lineup.

Unless it is shown by clear and convincing evidence that the identification was irreparably tainted, this Court will not reverse a conviction on these grounds. *Jackson v. State,* 628 S.W.2d 446, 448 (Tex. Crim.App.1982).

We overrule appellant's point of error two.

In points of error three, four, and 12, the appellant argues his counsel was ineffective for failing to object to testimony concerning the circumstances of his arrest as improper evidence of an extraneous offense.

■ To obtain a reversal on the ground of ineffective assistance of counsel, an appellant must show: (1) his counsel's performance was so deficient that counsel was not functioning at the level of competence guaranteed by the sixth amendment, and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). We presume counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689, 104 S.Ct. at 2065. A claim of ineffective assistance of counsel can be sustained only if it is firmly grounded in the record. *Mercado v. State,* 615 S.W.2d 225, 228 (Tex. Crim.App.1981); *Shepherd v. State,* 673 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1984, no pet.). Appellant has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Cannon v. State,* 668 S.W.2d 401, 403 (Tex.Crim.App.1984).

■ Here, appellant complains of the testimony concerning the disturbance call and his later arrest at a convenience store for having committed the offense of criminal mischief. One officer testified appellant was inside yelling obscenities and kicking the bathroom door. Another officer, when asked where the purses were recovered from, stated:

> According to the officer that made the arrest, the property was recovered in a stolen vehicle that the suspects had occupied.

Appellant contends the criminal mischief was unrelated to the offense of robbery and the mere mention of a stolen car allowed him to be convicted "for being a criminal generally." *Jones v. State,* 587 S.W.2d 115 (Tex.Crim.App.1979). We disagree.

Here, the identity of the complainants' assailant was the primary contested issue. The recovery of the stolen purses, the recovery of the stolen car, and the acts of

criminal mischief all showed the appellant's connection to the car which was relevant to why he was placed in the lineup. *See Albrecht v. State,* 486 S.W.2d 97, 100–101 (Tex.Crim.App.1972). Extraneous offenses are admissible: (a) to show the context in which the criminal act occurred (sometimes called "res gestae"); (b) to circumstantially prove identity where the state lacks direct evidence; (c) to prove scienter, where intent or guilty knowledge is an essential element of the State's case and cannot be inferred from the act itself; (d) to prove malice or state of mind where malice is an essential element of the State's case; (e) to show the accused's motive, particularly where the commission of the offense at bar is either conditioned on the commission of the extraneous offense or is a part of a continuing plan or scheme of which the crime on trial is also a part; (f) to refute a defensive theory raised by the accused. Further, this list is not and was never intended to be exhaustive. *Cantrell v. State,* 731 S.W.2d 84 (Tex.Crim.App.1987).

Relevant evidence is to be admitted unless its probative value is substantially outweighed by the danger of unfair prejudice to a defendant. TEX.R.CRIM.EVID. 403.

Appellant's counsel was not deficient. Appellant has not met the first requirement of *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

We overrule appellant's points of error three, four, and 12.

■ In points of error five and six, appellant argues his counsel was ineffective for failing to object to the prosecutor's introduction of "false evidence" before the jury. Relying on *Luck v. State,* 588 S.W.2d 371, 373 (Tex.Crim.App.1979), appellant contends he was denied a fair trial when, during direct examination of the arresting officer, the prosecutor stated appellant was the driver of the car found at the location of his arrest.

Appellant asserts that reversal must follow if the State presents a false picture of the facts by failing to correct its own testimony when it becomes apparent that it was false. 588 S.W.2d at 373 (citing *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)). Appellant's reliance on *Luck* is misplaced.

Here, the record clearly reflects appellant was not the driver. While questioning the officer, the prosecutor suggested the appellant had been the driver. Appellant's counsel immediately objected. The trial court sustained counsel's objection and the prosecutor rephrased the question. While examining another officer, the prosecutor referred to appellant as the driver of the car where the purses were found.[2] The appellant's counsel did not object.

This could be considered as an isolated failure to object to improper evidence or argument, which does not constitute ineffective assistance of counsel. *Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Crim.App. 1984); *Ewing v. State,* 549 S.W.2d 392, 395 (Tex.Crim.App.1977). Even assuming counsel's errors qualify his performance as "deficient," where there is "overwhelming evidence of [appellant's] guilt ... there is no reasonable probability that the result of [appellant's] trial would have been different." *Ex parte Walker,* 777 S.W.2d 427, 430 (Tex.Crim.App.1989).

To succeed under *Strickland,* appellant must show us there is a reasonable probability that, but for his counsel's alleged deficient performance, the result of the trial would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Appellant has not met this burden.

We overrule appellant's points of error five and six.

■ In points of error seven, eight, and nine, appellant argues his trial counsel was ineffective for failing to secure the testimony of other witnesses material to his defense of mistaken identity.

Appellant contends counsel should have called Riles and Mayfield to testify. Appellant, however, cites nothing showing that

---

**2.** Prosecutor: Did you tell [the complainants] prior to their viewing the lineup that [the appellant] had been arrested and that some of their property had been recovered in the car that he was driving?
Officer McClane: No, Ma'am.

either were available or would testify favorably. Appellant must show, on the record, that these witnesses would have testified to his benefit. *Wilkerson v. State*, 726 S.W.2d 542 (Tex.Crim.App.1986).

Appellant also contends counsel should have investigated or secured the testimony or report of the officer who initially reported Haba's and Debois' description of their assailant. Appellant contends Haba's initial description varied from the description given at trial.

Appellant, however, cites nothing showing counsel did not investigate. Nor is there any reasonable probability this evidence would have led to a different result. *Strickland*, 466 U.S. at 668, 104 S.Ct. at 2055.

We overrule appellant's points of error seven, eight, and nine.

◼ In points of error 10 and 11, appellant argues his trial counsel was ineffective for failing to object when the State bolstered Haba's identification. *Lyons v. State*, 388 S.W.2d 950 (Tex.Crim.App.1965).

Appellant contends Haba gave unimpeached testimony that she identified appellant as the number two suspect in the lineup. The State called Sergeant McClane, who testified that Haba was able to make a positive identification. Sergeant McClane did not state who she identified, but later stated appellant was in the number two position.

◼ Again, we are mindful that isolated failures to object to certain procedural mistakes or improper evidence or argument do not constitute ineffective assistance of counsel. *Ingham*, 679 S.W.2d at 509; *Ewing*, 549 S.W.2d at 395. Whether the appellant received error-free representation is not the test; that appellant's counsel made some mistakes at trial does not show ineffective assistance. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex.Crim.App.1990); *Ingham*, 679 S.W.2d at 509. *Strickland* requires us to determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."

*Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

Again, the appellant has not demonstrated any probability that this evidence would have led to a different result. *Strickland*, 466 U.S. at 668, 104 S.Ct. at 2055. After reviewing all of the alleged claims of ineffective assistance of counsel, we conclude appellant's counsel was not ineffective under the guidelines of *Strickland*.

We overrule appellant's points of error 10 and 11.

In points of error 13, 14, and 15, appellant argues the pen packets are deficient and his counsel was ineffective for failing to timely object. Appellant contends the certifications that precede the packets are signed "Debra R. Margy, Deputy," but that there is no indication of what she is deputy of. We disagree.

The "Deputy" designation follows the signature block "James D. Patton, Clerk, County Court, Walker County, Texas." Clearly, Margy is a deputy clerk of Walker County.

◼ Relying on *Dingler v. State*, 768 S.W.2d 305 (Tex.Crim.App.1989), appellant also claims that the pen packets are deficient because they contain no certification by the convicting court.

*Dingler*, however, has been overruled. *Reed v. State*, 811 S.W.2d 582, 583 (Tex. Crim.App.1991). Copies of judgments certified by the Department of Criminal Justice records custodian are admissible. *Id.; see also Gann v. State*, 818 S.W.2d 69, 70 (Tex.App.—Houston [1st Dist.] 1991, no pet.) (this Court ruled an identical complaint moot in light of *Reed* ).

We overrule appellant's points of error 13, 14, and 15.

◼ In points of error 16 and 17, appellant argues the evidence was insufficient to support the jury's finding of true to the second enhancement allegation and counsel was ineffective for failing to object to the State's introduction of a prior conviction.

The pen packet offered to support enhancement paragraph two includes the photograph, fingerprints and commitments of

appellant in cause numbers 459,530 and 452,237. The judgment sheet in cause number 459,530 indicates a conviction for "Eric Victor Esteves." The judgment sheet in cause number 452,376 indicates a conviction for "Aundra Dixon."

Appellant contends the evidence is insufficient to prove he is the same person as "Aundra Dixon," and, therefore, is also insufficient to support the jury's finding of true.

Enhancement paragraph two of the indictment, however, does not mention cause number 452,376. Enhancement paragraph two relies on the conviction in cause number 459,530, a conviction for "Eric Victor Esteves." Thus, we find the State properly linked appellant to the conviction used in the enhancement paragraphs.

As part of this argument, appellant argues his counsel was ineffective when he failed to object to the admission of the "Aundra Dixon" conviction. This alleged omission occurred during the punishment stage of the trial.

The *Strickland* test applies only to the appellant's allegation of ineffective assistance of counsel during the guilt-innocent stage of the trial, not to the punishment stage. *Ex parte Walker,* 777 S.W.2d 427, 430 (Tex.Crim.App.1989); *Ex parte Cruz,* 739 S.W.2d 53, 58 (Tex.Crim.App.1987). At the punishment stage, we judge counsel's effectiveness by the standard of "reasonably effective assistance." *Cruz,* 739 S.W.2d at 58. This standard requires a showing of harm due to the alleged ineffective assistance. *Stone v. State,* 751 S.W.2d 579, 582 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

The Court of Criminal Appeals addressed similar facts in *Rico v. State,* 707 S.W.2d 549 (Tex.Crim.App.1983) (op. on reh'g). In *Rico,* at the punishment phase of trial the prosecutor introduced into evidence the defendant's seven prior convictions. *Id.* at 556. There were valid grounds to object to two of the seven prior convictions, but the objection made by counsel was inadequate and failed to preserve the issue for review. *Id.* at 554. The court wrote that:

Even had defense counsel properly objected to the two prior convictions about which he complains on appeal and the two convictions excluded from evidence, the jury still would have had before them five prior convictions. Based upon this record, we are unable to say that there is a reasonable probability that the jury's decision as to punishment would have been any different.

*Id.* at 556.

The same reasoning and result apply here. The record demonstrates that the prosecutor properly linked appellant to the conviction used in the second enhancement paragraph. The jury found two enhancement paragraphs true.

We overrule appellant's points of error 16 and 17.

In point of error 18, appellant argues his trial counsel should have objected to the admission of the prior convictions because they did not contain evidence that he waived his right to trial by jury.

This same contention was raised and rejected in *McCoy v. State,* 529 S.W.2d 538, 539 (Tex.Crim.App.1975). The *McCoy* court held that because the judgment contained a recitation that the defendant had waived his right to trial by jury, there was a presumption of regularity that the trial court followed the proper rules of procedure. *Id.*

Here, the judgment contained similar language, and as in *McCoy,* appellant offers no evidence to show there was no written waiver of a jury trial in the prior convictions. *Id.*

We overrule appellant's point of error 18.

In point of error 19, appellant argues his trial counsel was ineffective for failing to put on mitigating facts to overcome the life sentence.

Nothing shows there was such evidence or that counsel knew or should have known of it at trial.

We overrule appellant's point of error 19.

The judgment is affirmed.

O'CONNOR, Justice, dissenting.

I dissent because of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In point of error one, the appellant argues he was denied a fair trial because the State peremptorily struck prospective jurors because of their race.

The appellant complains that the State used its peremptory strikes to remove four prospective jurors who were African–American from the jury. Because the State's overall conduct in jury selection is relevant in proving discrimination, we must review the voir dire for each African–American prospective juror who was struck by the State and the State's explanation for each. *Whitsey v. State*, 796 S.W.2d 707, 727 (Tex.Crim.App.1989).

By way of introduction, the panel of 50 was composed of 41 whites and nine African–Americans. Three of the African–Americans were excused for cause. Of the remaining six African–Americans who could have served on the jury, the State struck four. One African–American served on the jury and one was an alternate.

### Alma Simmons

I agree that the prosecutor had a legitimate reason to strike Simmons—she indicated that she would need more than one witness before she could vote for conviction, and only after being repeatedly told by the trial judge did Simmons agree to follow the one-witness rule.

The majority overrules the point of error as to Simmons, and then bolsters the prosecutor's explanation by noting that Simmons had a relative convicted of a crime. The prosecutor did not state that as her reason at the *Batson* hearing, thus we cannot assume that it was one of her reasons for striking the prospective juror. The additional explanation for the strike—that Simmons had a relative who has been convicted of a crime—becomes critical in the review of another African–American prospective juror struck by the prosecutor.

It is not the role of the appellate courts to supplement the prosecutor's reasons for striking a prospective member of the jury. The Court of Criminal Appeals, in discussing the role of the appellate court, did not suggest that the courts can supplement the prosecutor's reasons on appeal. *See Keeton v. State*, 749 S.W.2d 861, 869–70 (Tex. Crim.App.1988).

### Cynthia Ross

During the voir dire, the prosecutor did not ask Ross any questions. At the Batson hearing, the prosecutor explained that Ross had stared at her from the moment she entered the courtroom; that no other member stared at her to that degree. The prosecutor noticed Ms. Ross worked at Target, where the prosecutor shops. The prosecutor explained:

> I shop [at Target's], so I don't know if she recognized me and that's why she was staring at me or if she's been a witness or a member of the Defendant's family before. But based on that, I did not feel like she could be a good juror in one of my cases.

We must deal with whether the prosecutor's two explanation for striking Ross: (1) the prosecutor thought Ross might be either a witness or a member of the appellant's family; and (2) Ross stared at the prosecutor. In considering the two explanations, we must also consider that the prosecutor did not question Ross.

Recall that *Keeton* instructs us that the trial judge cannot merely accept the reasons given by the prosecutor at face value; the judge must consider whether the facially neutral explanations are contrived to avoid admitting discrimination. *Keeton*, 749 S.W.2d at 868. *Keeton* identified two factors that weigh heavily against the legitimacy of a racially neutral explanation: no examination or only a perfunctory examination of the juror, and a reason given for the challenge that is unrelated to the facts of the case. *Id.* at 866.

The prosecutor's first explanation seemed to be that Ross might have been a witness to the crime or a member of the appellant's family. Nothing in this record supports the prosecutor's suggestion that the juror might have been a witness or

might be related to the appellant. If the prosecutor had any real suspicion that Ross was either a witness or was a member of the appellant's family, the prosecutor could have struck Ross for cause. I would hold that the prosecutor's reason for the challenge—that Ross might be witness or a member of the appellant's family—is not supported by the record and is unrelated to the facts elicited in voir dire. *Keeton*, 749 S.W.2d at 868.

In *Hill v. State*, 787 S.W.2d 74, 78–79 (Tex.App.—Dallas 1990), *aff'd*, 827 S.W.2d 860 (Tex.Crim.App.1992), the prosecutor said he struck a juror because the prosecutor thought the juror would identify with the defendant and he did not like the way the juror responded to questions. The only questions the prosecutor had asked the juror were where he worked and if he could be fair. The Dallas Court of Appeals held that the reasons given by the prosecutor for challenging the juror were based on assumptions of the prosecutor and were unrelated to evidence in the case. Thus, the court concluded the reason for the strike could not be considered race-neutral. *Id.; see also Reich–Bacot v. State*, 789 S.W.2d 401, 403 (Tex.App.—Dallas 1990), *pet. dism'd per curiam*, 815 S.W.2d 582 (Tex.Crim.App.1991) (the prosecutor's explanation that the juror worked with people involved with criminal activities, when juror actually said she worked with people with disabilities, was not supported by the evidence and thus was not a race-neutral explanation); *Chivers v. State*, 796 S.W.2d 539, 542 (Tex.App.—Dallas 1990, pet. ref'd) (the prosecutor's unverified assumption that a juror who worked for DART did not indicate a sufficient level of intelligence, was not a race-neutral explanation); *Lewis v. State*, 779 S.W.2d 449, 455 (Tex.App.—Tyler 1989, pet. ref'd) (lack of meaningful examination of an African–American juror who said she knew one of the State's witnesses from another case, did not rebut presumption of racial discrimination).

Here, the prosecutor had nothing on which to base her assumption that the prospective juror knew her or was related to of the defendant. That should lead us to consider the prosecutor's lack of interroga-

tion: If the prosecutor had any real suspicion that the prospective juror knew her or was related to the appellant, the prosecutor should have questioned the juror. The prosecutor did not ask Ross any questions. Under *Keeton* and other cases, the failure to question a juror weighs heavily against the prosecutor's stated reason. *Keeton*, 749 S.W.2d at 868; *see also Daniels v. State*, 768 S.W.2d 314, 318 (Tex.App.—Tyler 1988, pet. ref'd) (the explanation that two jurors were inattentive, coupled with lack of questioning, held not to present racially plausible reasons for striking African–American jurors). If a prosecutor makes an assumption about a juror but does not question the juror to verify the assumption, it is some indication that the strike was not race-neutral. *Woods v. State*, 801 S.W.2d 932, 936–37 (Tex.App.—Austin 1990, pet. ref'd) (the prosecutor said he struck the juror because he had a punk rock haircut which he associated with liberals, radicals, and the drug culture, but did not question to a juror to verify his assumption). Here, the prosecutor had no excuse not to question the juror because, if the suspicions were verified, the prosecutor could have challenged Ross for cause.

Once we reject the "witness or member of the family" reason to strike Ross, the only reason left is that the prosecutor said Ross stared at her. Most alert jurors watch the prosecutor during the prosecutor's voir dire. If the prosecutor had said Ross seemed hostile to her, and had verified it with questions, that might have been a reason to strike Ross. But, staring alone is not any justification. *See Woods*, 801 S.W.2d at 937 (prosecutor's explanation that juror did not appear interested and did not react as other jurors, coupled with abbreviated questioning of the juror, was not race neutral explanation).

I would hold that the sum of the two reasons—staring plus the "witness or relative"—in addition to the lack of questioning amounts to failure to provide a race-neutral reason to strike Ross.

I would sustain the *Batson* point as to Ross.

## Ruby Reed

The prosecutor said she struck Reed because she was not responsive to the questions she asked the panel. The prosecutor did not ask Reed any direct questions. In addition, the prosecutor said another prosecutor noted that Reed had yawned throughout the voir dire proceedings. The defense attorney identified two white jurors who had yawned during voir dire, yet had not been struck by the State.

When the prosecutor offers race-neutral explanations for strikes, it becomes the defendant's burden to persuade the court that such challenges were racially motivated. *Lewis v. State*, 815 S.W.2d 560, 563 (Tex. Crim.App.1991); *Jones v. State*, 781 S.W.2d 415, 417–18 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). As stated earlier, one factor that weighs against the State, particularly when the charge of pretext excuse is raised, is that the State did not pose any individual questions to the challenged juror. *Keeton*, 749 S.W.2d at 868. Here, the State did not question the juror and the defense pointed out another white juror who was not struck for the same behavior.

In *Lewis v. State*, 779 S.W.2d 449, 453 (Tex.App.—Tyler 1989, pet. ref'd), the prosecutor said he struck an African–American juror who wore a mustache. The prosecutor admitted that he regularly struck jurors with mustaches or beards. The record revealed that the prosecutor did not strike a white juror with a beard. *Lewis*, 779 S.W.2d at 455. The court held the explanation for the strike was but a sham or pretext to avoid admitting racial discrimination. Hence, the court concluded, the explanation was not sufficient to rebut the presumption of racial discrimination. *Id.*

The majority faults the appellant for not offering rebuttal. The appellant did everything he could—he made the point that the prosecutor did not strike whites who behaved similarly to Reed. The evidence that the majority wants the appellant to rebut is the prosecutor's opinion. It is not possible to rebut it any more than the appellant did.

I would sustain the *Batson* challenge as to Reed.

## Bernita Harrison

The prosecutor said she struck Harrison because she has an uncle who is serving time after he was convicted for sexual assault of a child. In response to that reason, the appellant's lawyer pointed out that the prosecutor did not strike a white juror who had a nephew in prison for armed robbery. In reply, the prosecutor explained she did not strike the white juror because the juror explained he was not close to his nephew and had completely forgotten about his nephew's Louisiana conviction until he was questioned during voir dire.

There are two things that are noteworthy about the prosecutors justification: (1) the white juror volunteered the information that he was not close to his nephew; and (2) the prosecutor could have asked Harrison if she was close to her uncle, but did not. In other respects, the two jurors seemed to give similar response—they did not know if their relative had been treated fairly.

The prosecutor's conversation with the prospective jurors should be contrasted. After the white juror remembered he had a relative who had been charged with an offense, the following exchange took place:

*White juror:* Something just occurred to me. It happened a long time ago. A nephew had an armed robbery conviction a long time ago, in New Orleans.

*Prosecutor:* Do you feel like your nephew was treated fairly by the system? Do you have an opinion about it?

*White juror:* As far as I know. I really wasn't that close to him.

*Prosecutor:* Was there anything about that that would cause you not to be fair in this case?

*White juror:* No.

A few minutes later, the prosecutor interrogated Ms. Harrison on the same subject:

*Prosecutor:* Ms. Harrison?

*Harrison:* A relative.

*Prosecutor:* Was it someone in your immediate family?

*Harrison:* An uncle.

*Prosecutor:* Do you know what kind of case it was?

*Harrison:* I think it was child molesting.

*Prosecutor:* Would that cause you not to not to be fair in this case? Do you think your uncle was treated fairly by the DA's office or by the court system?

*Harrison:* Well, I don't know. I think he's still in jail.

Nothing in this record supports the prosecutor's explanation that she struck Ms. Harrison because she was close to her uncle. In fact, by saying she did not know if her uncle was still in jail ("I think he is still in jail"), it shows that she probably was not close to him.

I would sustain the *Batson* challenge as to Ms. Harrison and hold that the prosecutor's reason for striking her evidenced disparate treatment of the prospective jurors because she did not strike the white juror, *Keeton,* 749 S.W.2d at 868; *Miller-El v. State,* 790 S.W.2d 351, 357 (Tex.App.—Dallas 1990, pet. ref'd) (when prosecutor struck an African–American for the stated reason that she had only recently held her job, but did not strike a white juror for the same reason, the excuse constituted a sham or pretext); *Vann v. State,* 788 S.W.2d 899, 905 (Tex.App.—Dallas 1990, pet. ref'd) (prosecutor's reason for striking two African–American men, that they were conservative, was a sham because he did not strike conservative white men).

I would sustain appellant's point of error one.

### Ineffective assistance of counsel

The majority twice overrules appellant's points of error challenging the effectiveness of counsel with the rubric that an "isolated failure" of counsel does not constitute ineffective assistance of counsel. *Ingham v. State,* 679 S.W.2d 503, 509 (Tex. Crim.App.1984); *Ewing v. State,* 549 S.W.2d 392, 395 (Tex.Crim.App.1977). If counsel makes two mistakes, they are not isolated failures. I do not believe we can repeatedly overrule points of error that

challenge different omissions of the lawyer with that statement.