**Eric Victor ESTEVES, Appellant.**

**v.**

**The STATE of Texas, Appellee.**

**No. 91–93.**

Court of Criminal Appeals of Texas, En Banc.

March 17, 1993.

Robert J. Di Vito, Huntsville, for appellant.

John B. Holmes, Jr., Dist. Atty. and Ernest Davila and Leslie Brock, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MEYERS, Judge.

Appellant was convicted of aggravated robbery, enhanced by evidence of two prior convictions, with punishment being assessed by the jury at life in the penitentiary. The conviction was affirmed. *Esteves v. State*, 845 S.W.2d 291 (Tex.App.—Houston [1st], 1992). At issue are the State's exercise of peremptory challenges towards three black members of the venire.[1] We will reverse.

■ It is now well accepted that the Equal Protection Clause of the fourteenth amendment to the United States Constitu-

tion prohibits the State from exercising its peremptory challenges in a purposefully discriminatory manner. See *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); see also *Keeton v. State*, 749 S.W.2d 861 (Tex.Cr.App.1988). Additionally, Article I, § 3a of the Texas Constitution and Article 35.261, V.A.C.C.P., prohibit the exercise of peremptory challenges based on race. In reviewing a *Batson* claim, the appellate court must determine whether the trial court's findings are clearly erroneous. *Hill v. State*, 827 S.W.2d 860 (Tex.Cr.App.1992); *Whitsey v. State*, 796 S.W.2d 707 (Tex.Cr.App.1989). We shall address the facts surrounding the exercise of the State's peremptory challenge as to each veniremember in question.

### *Alma Simmons*

■ Of the four black members of the venire whom the State struck, the majority and the dissent agree only on Simmons. She initially stated that she would require more than one witness before she could vote for conviction. Although Simmons agreed to follow the "one witness rule" after being repeatedly admonished by the judge, the State was justified in exercising a peremptory challenge against her, based on her initial response. See e.g. *Harris v. State*, 827 S.W.2d 949 (Tex.Cr.App.1992). Neither the trial court nor the Court of Appeals erred as to the use of a peremptory challenge to exclude Simmons.

### *Ruby Reed*

■ The prosecutor claimed to have struck Reed for two reasons. The first claim was that Reed was not responsive to the prosecutor's questions. Second, the prosecutor stated that her assistant noticed Reed yawning during the entire voir dire. The dissent points out that the State never asked any questions of Reed and that at the *Batson* hearing the defense offered evidence that there had been white members of the venire who had been yawning during the voir dire whom the State did not

---

1. The dissent below noted that, "the panel of 50 was composed of 41 whites and nine African-Americans. Three of the African-Americans were excused for cause. Of the remaining six African-Americans who could have served on the jury, the State struck four. One African-American served on the jury and one was an alternate."

strike.[2] While there may have been reason to strike Reed based on her yawning through voir dire when combined with some other factor(s),[3] the Court of Appeals did not consider the lack of questions directed individually at Reed.

### Cynthia Ross

At the *Batson* hearing the prosecutor stated that she struck Ross because she had been staring at the prosecutor "from the moment she entered the courtroom," and that no other member of the venire had stared at her to that degree. While this appears to be a race-neutral reason at first reading, the dissent aptly points out that the majority did not consider all the relevant evidence. The prosecutor stated that she had noticed that Ross worked at Target, where the prosecutor shopped.

> I shop at [Target's], so I don't know if she recognized me and that's why she was staring at me or if she's been a witness or a member of the Defendant's family before. But based on that, I did not feel she would be a good juror in one of my cases.

The dissent notes that the prosecutor never asked any questions of Ross in an attempt to determine why she was staring at the prosecutor. Additionally, her response indicates that she recognized there were several valid reasons why Ross might have stared at her—yet no further inquiry was forthcoming. Finally, regardless of what she did or did not ask Ross, the prosecutor's response, "so *I don't know if she recognized me ...*" (emphasis added) demonstrates that she was basing her decision to exercise a peremptory challenge on pure speculation. Accordingly, there was relevant evidence not considered by the Court of Appeals in its opinion.

### Bernita Harrison

The reason given by the prosecutor for striking Harrison was that she had an uncle who was serving time for sexual assault of a child. When the defense pointed out, during the *Batson* hearing that the prosecutor had not exercised a peremptory challenge against a white veniremember who had a nephew serving time for aggravated robbery (the same offense as in the instant case), the prosecutor responded that she had not challenged the white veniremember because he "was not close to his nephew and had completely forgotten about ... [the conviction] ... until he was questioned during voir dire." The majority found this reason was sufficient to explain the differences in the strikes. As the dissent points out, however, the State never made any inquiry of Harrison regarding whether she was close to her uncle. Nor was there any indication that Harrison felt the uncle was treated unfairly. As indicated by the dissent, "[N]othing in this record supports the prosecutor's explanation that she struck Ms. Harrison because she was close to her uncle." Additionally, it is noteworthy that the prosecutor questioned Ms. Harrison *after* questioning the white veniremember. Questions regarding Harrison's closeness to her uncle would have been appropriate, especially when the other veniremember's responses are considered. The Court of Appeals did not consider the lack of evidence to support the prosecutor's conclusion.

In this case the Court of Appeals held Appellant had not shown that the trial court's determination was "clearly erroneous." This was based on the facts as determined by the majority. The dissent focuses on additional facts not considered by the majority opinion.

■ Normally, we defer to the factual findings of the courts of appeals. *Arcila v. State*, 834 S.W.2d 357 (Tex.Cr.App.1992). However, where, as in this case, the Court of Appeals reviews a case without considering all the relevant evidence, we will remand the cause for a new factual determination which takes into account all such

---

**2.** Although racial bias cannot be automatically imputed in every situation where one of the State's reasons for using a peremptory challenge would technically apply to another member of the venire the State found acceptable, it can be imputed when there is disparate treatment of veniremembers as to the sole reason or primary reasons stated for the exercise of the peremptory challenge. See *Cantu v. State*, 842 S.W.2d 667 (Tex.Cr.App.1992).

**3.** Because of our disposition of this case, we offer no comment on whether such factors are present in the record.

material. *Arcila* is not applicable when the Court of Appeals reviews a case without considering all the relevant evidence. *Cornish v. State*, 848 S.W.2d 144 (Tex.Cr. App.1993); and *Reynolds v. State*, 848 S.W.2d 148 (Tex.Cr.App.1993).

Because the majority opinion did not consider the relevant evidence discussed by the dissent, we are unable to say that the trial court's findings are not clearly erroneous. Accordingly, we summarily grant Appellant's petition, vacate the judgment of the Court of Appeals and remand this case to that court for reconsideration of Appellant's *Batson* claim in a manner not inconsistent with this opinion.