COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 SHANNON
 LEWELLYN,
  
                             Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-02-00284-CR
  
 Appeal from the
  
 204th District Court
  
 of Dallas County, Texas
  
 (TC# F-0175010-HQ)
 
 




 

                                                    MEMORANDUM
OPINION

Shannon Lewellyn
appeals his conviction for robbery.  We
affirm the trial court=s judgment.

Facts

Shannon Lewellyn
was convicted of robbing Calvin Ware of his vehicle in Dallas, Texas.  The vehicle was located in front of the Concentra Medical Clinic. 
Ware had parked the car temporarily with the keys in the vehicle and the
trunk open.  Ware noticed someone
shutting the trunk of his vehicle and surmised that there was a theft in
progress.








Returning to his car, Ware found Lewellyn in his driver=s seat with the motor running.  Ware testified that he leaned inside the
vehicle and attempted to shift the car to park while the vehicle was backing
up, in order to thwart the theft.  Lewellyn then clenched a fist and swung at Ware.  Ware also testified to believing that Lewellyn possessed a weapon, perhaps a gun.  Ware felt threatened and believed there was
imminent harm to his person.  Lewellyn called two defense witnesses, who testified that
they had witnessed the car theft, but saw no interaction between Ware and Lewellyn.  The
vehicle was found three days later in Lewellyn=s possession in Memphis, Tennessee.

The Trial Court Did Not Err in
Refusing to Charge the Jury on Theft

 Lewellyn=s first point of error asserts that
the jury should have received an instruction on the lesser-included offense of
theft.  He argues that the conflicting
testimony of witnesses should have afforded this to him.  Our standard of review for this issue is
twofold:  first, the lesser-included
offense must be included within the proof charged; and second, the record must
illustrate some evidence that if guilty, the accused was guilty only of the
lesser offense.  See Rousseau v. State,
855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993); Aguilar
v. State, 682 S.W.2d 556, 558 (Tex. Crim. App.
1985).  See also Tex. Code Crim. Proc. Ann. art.
37.09.[1]








 The dual inquiry of Aguilar/Rousseau
becomes a four-step process in determining whether Lewellyn
was entitled to a lesser-offense charge: 
(1) statutory analysis in light of the charged offense; (2) factual
analysis in light of the charged offense; (3) examination of the elements of
the lesser offense to see if they are functionally the same or less than those
required to prove the charged offense; (4) then the proof or facts actually
presented to prove the elements of the charged offense to determine whether the
proof also supports the lesser offense.  Jacob v. State, 892 S.W.2d 905, 908 (Tex. Crim. App. 1995).








First, we examine the statute in
light of the charged offense.  To find a
defendant guilty of robbery under Texas Penal Code section 29.02,[2]
the statute requires both a theft element and Aintentionally or knowingly threaten[ing] or plac[ing]
another in fear of imminent bodily injury or death.@ 
See Harper v. State, 675 S.W.2d 534 (Tex.
App.--Houston [14th Dist.] 1984, pet. ref=d).  However, the actual commission of the offense
of theft is not a prerequisite to the commission of the offense of robbery;
rather, the gravaman of robbery is its assaultive nature and not theft.  See Purser v. State,
902 S.W.2d 641, 647 (Tex. App.--El Paso 1995, pet. ref=d).  We are not convinced, therefore, that theft
is an appropriate lesser-included offense to the assaultive
offense of robbery, but for the moment we will assume that it is and examine the
other steps in the analysis.

Second, then, we superimpose the
factual analysis over the charged offense. 
The victim in this case testified that he believed there was a gun
present and that there was imminent harm to him.  A conviction for robbery under section
29.02(a)(2) requires proof of actual or threatened
violence to the victim, or intimidation of such a nature that the victim was
put in fear.  Green
v. State, 567 S.W.2d 211, 213 (Tex. Crim. App.
1978); Wilmeth v. State, 808 S.W.2d
703, 705 (Tex. App.--Tyler 1991, no pet.).  The fear must be of such nature as in reason
and common experience, it is likely to induce a person
to part with his property against his will. 
Green, 567 S.W.2d at 213; Wilmeth, 808 S.W.2d at 705.  The victim=s fear may not arise merely from some
timidity, but must result from some conduct of the perpetrator.   Devine v. State, 786
S.W.2d 268, 271 (Tex. Crim. App. 1989).








Here, there was contradicting
testimony as to whether the element Afear
of imminent bodily injury or death,@ necessary to establish a robbery,
was present.  Tex. Pen. Code Ann. ' 29.02(a)(2)
(Vernon 2003).  Evidence of this element
was provided solely through the testimony of the victim, Ware.  This evidence was contested through the
testimony of the defense=s two witnesses.  A
confrontation between the victim and Lewellyn becomes
an element of the greater offense, that is of actual
or threatened violence to the victim, resulting in fear of imminent
danger.  In contrast, Lewellyn=s witnesses testified that they had
seen the theft but no interaction between the two men.  The lesser offense in this case, theft, does
not require an actual or perceived threat of imminent physical harm.  Compare Tex. Pen. Code Ann. ' 29.02 (Vernon 2003), with Tex.
Pen. Code Ann. ' 31.03 (Vernon 2003).  We find this step in the analysis supports a
charge including the lesser-included offense of theft.

Third, we examine the elements of the
claimed lesser-included offense to determine whether it is actually a
lesser-included offense of the offense charged. 
See Feldman v. State, 71 S.W.3d 738, 750
(Tex. Crim. App. 2002).  This we do on a case-by-case basis.

Initially, we note that Texas once
held that Atheft is an integral part of the
offense of aggravated robbery.@  See
Ex parte Crosby, 703 S.W.2d 683, 685 (Tex. Crim. App. 1986). 
However, we believe caution is called for before assuming that theft
will be a lesser-included offense under our present penal code, as more recent
cases have characterized theft as an assaultive
offense, not a type of aggravated theft.  
See Ex parte Hawkins, 6 S.W.3d 554,
559-60 (Tex. Crim. App. 1999) (comparing the Penal
Code of 1925 and the Penal Code of 1974, determining that robbery is a form of
assault and  holding
that Athe present robbery offense is no
longer a form of theft@) cf., Bignall v. State,
887 S.W.2d 21, 23 (Tex. Crim. App. 1994) (stating
that A[n]o dispute exists that a completed
theft is a lesser included offense of aggravated robbery@).








We look next, therefore, to the
statute which specifies a value defined for property within the code.  Tex. Pen. Code Ann. ' 31.03(e) (Vernon 2003).  AReceipt of property and proof of its
value are critical elements in the offense of theft.@ 
Sanders v. State, 664 S.W.2d 705, 708 (Tex. Crim. App. 1982) (emphasis in original).  This value for the property in question
affects the grade of the misdemeanor or felony offense of the act.  See Campbell v. State, 5 S.W.3d 693, 700 n.13 (Tex. Crim. App. 1999).  No such requirement of value is present in
proving a robbery charge, and we therefore cannot find that this step supported
a charge on theft.

Our fourth and final step is an
examination of the evidence presented to prove the charged offense, and
determine whether the proof also supports the lesser offense.  This step requires that the record contain
some evidence that would permit a rational jury to find that the defendant is guilty
only of the lesser offense.  Campbell,
5 S.W.3d at 700 n.13. 
A lesser-included offense is raised if anything more than a scintilla of
evidence, Aeither affirmatively refutes or
negates an element establishing the greater offense, or the evidence on the
issue is subject to two different interpretations, and one of the
interpretations negates or rebuts an element of the greater.@ 
Schweinle v. State, 915 S.W.2d 17, 18-19 (Tex. Crim.
App. 1996) (per curiam).

Here, as mentioned in the third step
of our analysis, the record contains no evidence pertaining to the value of the
property stolen.  When no evidence is
presented to show the value of the property taken, a theft instruction is not
supported by the facts.  See, e.g., Cavazos v. State, 904 S.W.2d 744, 749
(Tex. App.--Corpus Christi 1995, pet. ref=d).








Thus, we conclude that a rational trier of facts could find the elements of robbery inclusive
of being placed in fear of imminent harm, but that value of the item is an
essential element of the offense of theft and that element was not raised by
the evidence, therefore a jury instruction on the lesser offense of theft was
not warranted, and the trial court did not err in declining to submit it.  We overrule Point of Error One.

The State=s Jury Argument was Appropriate or
Resulted in Harmless Error

Lewellyn contends in his second point of
error that the trial court erred in allowing an impermissible jury argument
wherein the prosecutor commented on the victim=s credibility.

The standard of review for jury
argument is abuse of discretion.  Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).

The State contends that the argument
complained of was simply a response to the remarks of
defense counsel, and therefore permissible. 
We find that is a credible assertion. 
The prosecutor may answer jury arguments of opposing counsel, limited to
the scope of counsel=s invitation.  Andujo
v. State, 755 S.W.2d 138, 144 (Tex. Crim. App.
1988).  Defense counsel made the
following statements during closing argument:

Defense:  Can we really believe what this man [the
testifying victim] says? . . .  He=s changing up all of these things.  Or does it make sense that this man felt bad
about leaving his keys in his car that day? 
He got his car stolen.  It is not
his fault that his car got stolen.  But
it sure sounds a lot better than, hey, a guy got in my car and drove off
because I left the keys in it or, hey, I went out there and saw the guy.  He had a gun. 
He stuck a gun in my face.  He had
a dark object, so I backed up off him.  I
didn=t want to get hurt. 
It=s
not worth a car.  I was in fear.








 

Defense:  You can=t
believe what he [testifying victim] says because there are too many
contradictions in his testimony.  His
credibility gone, wiped out.

 

Defense:  He=s [Appellant] not guilty.  Let him go. 
That=s the right thing to do, because beyond a reasonable
doubt--Mr. Ware [testifying victim] himself should have given enough reasonable
doubt about his testimony on the day out there what happened versus his
testimony in here.

 

He doesn=t even know what happened.

 

The prosecutor made the following
comments during the final jury argument at the guilt/innocence phase of the
trial:

Prosecutor:  It=s been
alluded to that he=s [the testifying victim is] not believable.  If you don=t
believe his testimony and you don=t
believe that he=s telling you what he remembers as best he can, then I
do want you to find the defendant not guilty. 
He=s
telling you as best he can what he recalls in that situation.

 

I think
that we all know from common sense in our lives that if you tell a lie you
usually make it better than it would have been with the truth.  I think that if Mr. Ware were going to come
in here and perjure himself --

 

Defense:  I=m going
to object to what the State=s counsel thinks.

 

The
Court:  Overrule, Counsel.

 

Prosecutor:  I think that if he was going to come in here
and commit a third-degree felony and perjure himself for somebody he=s never met, he would probably make it better than
just I think I saw a gun.

 

I think
what you=ve got is a real honest guy who says, you know what--

 

Defense:  Objection. 
She=s
commenting on the credibility of the complainant in this case.  That=s
improper argument.

 

The
Court:  Overrule, Counsel.








 

Prosecutor:  If you don=t
believe him then walk the guy.  But I
think we do believe him, and I think he=s telling us as much as he can . . . .

 

In reviewing defense counsel=s argument and the prosecutor=s response, we cannot say the trial
court abused its discretion in concluding any comment on the victim=s believability was invited by
defense counsel.  The response was within
the scope of the invited argument, and no error occurred.  We overrule Point of Error Two.

Batson Argument

We combine Lewellyn=s third, fourth, and fifth points of
error.  Lewellyn
asserts that race-based peremptory challenges were made to venire persons
eight, sixteen, nineteen, and that eight of the ten peremptory strikes by the
prosecution were African-Americans.  This
is commonly known as a Batson challenge. 
Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The trial court=s decision on the ultimate question
of discriminatory intent represents a finding of fact to be accorded great
deference on appeal which we will not overturn unless clearly erroneous.  Miller-El v. Cockrell,
537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931
(2003).  This deference is
necessary because the reviewing court analyzes only the transcript from voir dire, and is not positioned to make credibility
determinations.  Id.








There is a three-step process to this
challenge:  (1) the challenging party
makes a prima facie showing that the juror strikes were made on an
impermissible basis, (2) after a prima facie case is made, the burden shifts to
the challenged party to provide neutral reasoning for the strike or strikes,
and (3) once a neutral reason is provided, the challenger must then show that
the reason provided is a mere pretext for discrimination.  Batson, 476 U.S. at 97-98, 106 S.Ct. at 1723-24. 
This Batson challenge is also in accordance with Tex. Code Crim. Proc. Ann. art.
35.261 (Vernon 1989).[3]   See also Hutchinson v.
State, 86 S.W.3d 636, 639 (Tex. Crim. App. 2002).  After each of the three prongs has been
satisfied, the trial court must then decide whether the objecting party has
proven purposeful discrimination, based largely on an evaluation of
credibility.  Herron v. State, 86
S.W.3d 621, 630 (Tex. Crim. App. 2002) (citing Ladd
v. State, 3 S.W.3d 547, 563 (Tex. Crim. App.
1999)).  Applying this standard to the
instant case, we find the trial court=s findings were supported by the
record.








Lewellyn, through his attorney, made an
original motion to challenge the peremptory strikes of jurors on March 5, 2002,
for a trial and voir dire that began on May 28, 2002.

If a hearing has not been held, then
the appellate court should abate the appeal and remand for a Batson
hearing; however, when such a hearing has been held, because of the standard of
clear error necessary there are few cases that are returned to the trial court
for cause.  See, e.g., Hutchinson,
86 S.W.3d at 639-40.  The record shows
that a hearing on the challenge was held; therefore, we do not remand and
continue our analysis.

Lewellyn made a Batson challenge and
the State then articulated reasons for the strike.  Once the State has offered race-neutral
explanations for peremptory challenges and the trial court has ruled on the
question of purposeful discrimination, the preliminary issue of a prima facie
case becomes moot.  Malone
v. State, 919 S.W.2d 410, 412 (Tex. Crim. App.
1996) (citing Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct.
1859, 1866, 114 L.Ed.2d 395 (1991)).  Once the prosecutor has
articulated race-neutral explanations, the burden shifts back to the defendant
to show that the explanations are really a pretext for discrimination.  Mathis v. State, 67
S.W.3d 918, 924 (Tex. Crim. App. 2002).  Here, the record is silent as to the defense
offering any further argument.  This
important third prong of the Batson challenge is insufficient.  In order to move forward with his burden, the
challenger must then prove by a preponderance of the evidence that the reasons
given by the State are a sham or pretext for discrimination.  See Keeton v. State, 749 S.W.2d 861, 868 (Tex. Crim.
App. 1988).








The third prong or step of this
inquiry is afforded the greatest weight. 
It is not until the third step that the persuasiveness of the
justification becomes relevant -- the step in which the trial court determines
whether the opponent of the strike has carried his burden of proving purposeful
discrimination.  Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct.
1769, 1771, 131 L.Ed.2d 834 (1995).  
A[I]mplausible
or fantastic justifications may (and probably will) be found to be pretexts for
purposeful discrimination.@  Id.  It is the trial court=s job to determine whether the prosecutor=s race-neutral explanations are
credible, which it impliedly did here.  See
Miller-El, 123 S.Ct. at 1040.  Defendant did not respond with evidence of
pretext, and therefore no grounds for reversal exist.








Out of an abundance of caution,
however, we will examine the State=s articulated reasons for its
peremptory challenges.  As to venire
person number eight, the State offered as its reason for strike of this person
his inability to apply the maximum punishment and the one witness rule, and
although he was rehabilitated on those comments, the State felt he was
insincere.  A juror=s view on punishment is a
race-neutral reason for a peremptory strike. 
See Chambers v. State, 866 S.W.2d 9, 24 (Tex. Crim.
App. 1993); Esteves v. State, 849
S.W.2d 822, 823 (Tex. Crim. App. 1993).  Additionally, the potential juror approached
the court and stated his stepson had been involved in a robbery four years
previously and that he felt his relative had received a sentence unwarranted by
the crime.  We have held that the arrest
or conviction of a venire person=s relative is a race-neutral reason
for strike.  See Munson v. State, 774 S.W.2d 778, 779-80 (Tex. App.--El Paso 1989, no pet.).

As to venire person number sixteen,
the State=s reason for strike was his response
to a hypothetical situation, in which a victim is threatened and then
robbed.  This potential juror stated that
a threat might be more characterized as verbal abuse and that in order for an
actual threat to exist, the assailant would actually have to Afollow through with it.@ 
Venire person sixteen also seemed to have difficulty accepting robbery
as theft accompanied by a mere threat and not necessarily accompanying
violence.

Prosecution:  [Venire person sixteen], how do you feel
about that [a threat versus commission of the crime]?

 

Venire
Person:  I kind of feel its the same.  But a
threat is like verbal abuse instead of just taking action against him.  I guess in the way you characterize it, you=re going to show a course of action, follow through
with it.

 

Prosecution:  Do you think robbery is too strong of a
charge for someone--let=s say they threatened to bloody your nose to take your
wallet.

 

Venire
Person: You got to look at it--when you talk about a robbery, you=re talking about stealing something; you=re talking about robbery.

 

Later, the prosecution posed a hypothetical, in which a
person threatens to slap another if the victim does not give the perpetrator his
wallet; he then asked this venire person if he could convict of robbery.  The venire person exhibited a reluctance to
convict for robbery, in lieu of a theft conviction, and then stated, AYou would have to have a real pathetic
witness and a lot of corroboration.@ 
The State=s strike here appears race neutral.








Finally, addressing the strike to
venire person nineteen, the prosecutor stated the strike was due to his work
with gang members and youth programmer. 
The prosecution also struck venire person eleven, a white juror and
childcare worker for the same reason.  
For each of these strikes, the prosecution=s stated reason was their occupation
made them predisposed to being sympathetic and lenient jurors and not a typical
State juror.  We have held that striking
a venire person because of employment is a race-neutral explanation for a
peremptory strike.  Brewer
v. State, 932 S.W.2d 161, 165 (Tex. App.--El Paso 1996, no pet.).

The overriding standard is whether
the trial court=s decision was supported by the record such that it was not
clearly erroneous.  Vargas
v. State, 838 S.W.2d 552, 554 (Tex. Crim. App.
1992).  We hold that the trial
court did not abuse its discretion by finding that the jury strikes were race
neutral.  We overrule Points of Error
Three, Four, and Five.

Conclusion

For the foregoing reasons, the
judgment of the trial court is affirmed. 

 

SUSAN
LARSEN, Justice

August 14, 2003

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.

 

(Do Not Publish)











[1]Lesser
included offense

An offense is a lesser included
offense if:

(1) it is established by proof of the
same or less than all the facts required to establish the commission of the
offense charged;

(2) it differs from the offense charged
only in the respect that a less serious injury or risk of injury to the same
person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged
only in the respect that a less culpable mental state suffices to establish its
commission; or

(4) it consists of an attempt to
commit the offense charged or an otherwise included offense.  Tex. Code Crim. Proc. Ann. art. 37.09
(Vernon 1981).





[2](a)
A person commits an offense if, in the course of committing theft as defined in             Chapter 31 and with intent to
obtain or maintain control of the property, he:

(1) intentionally, knowingly, or
recklessly causes bodily injury to another; or

(2) intentionally
or knowingly threatens or places another in fear of imminent bodily injury or
death.

(b) An offense under this section is a felony of the second
degree.  Tex. Pen. Code Ann. ' 29.02 (Vernon 2003).





[3]Peremptory
challenges based on race prohibited

(a) After the parties have delivered their
lists to the clerk under Article 35.26 of this code and before the court has
impaneled the jury, the defendant may request the court to dismiss the array
and call a new array in the case.  The
court shall grant the motion of a defendant for dismissal of the array if the
court determines that the defendant is a member of an identifiable racial
group, that the attorney representing the state exercised peremptory challenges
for the purpose of excluding persons from the jury on the basis of their race,
and that the defendant has offered evidence of relevant facts that tend to show
that challenges made by the attorney representing the state were made for
reasons based on race.  If the defendant
establishes a prima facie case, the burden then shifts to the attorney
representing the state to give a racially neutral explanation for the
challenges.  The burden of persuasion
remains with the defendant to establish purposeful discrimination.

(b) If the court determines that the attorney representing
the state challenged prospective jurors on the basis of race, the court shall
call a new array in the case.